## HUSSEY *vs.* ROQUEMORE.

[ACTION ON NOTE GIVEN FOR PURCHASE MONEY OF LAND.]

1. *Discharge of note by subsequent parol agreement.*—A parol agreement between vendor and vendee, made on discovering that the vendor had no title to a portion of the land conveyed, to the effect that the vendee should be discharged from the payment of the balance due on the note, unless the vendor made him a good title to that portion of the land within a reasonable time, is valid, and constitutes a good defence to an action on the note to recover the balance.

2. *Retention of possession by vendee.*—If the vendee retain the possession of the land under the contract, this might operate as a waiver or extension of the time for the delivery of the deed; but if he abandon it within a reasonable time, the note cannot be enforced against him, even though he retain the possession of the other portions.

3. *Measure of damages.*—The damages resulting from the failure of the vendor

to make title to the land being uncertain, and the difference between the value of the land and the balance due on the note being slight, the agreement is not in the nature of a penalty, which would only entitle the vendee to scale the note to the amount of the actual value of the land; but discharges him, if titles are not made, from the entire balance due on the note.

4. *Estoppel cannot arise from promise made on Sunday.*—A promise made on Sunday to pay the balance due on a promissory note, against which the promisor has a valid defence, even if made under circumstances which ordinarily would estop him from setting up that defence, is void under the statute, and has no binding effect.

5. *Promise to make deed not performed by tender of another's deed.*—If the vendor, on discovering that he has no title to a portion of the land, promise to "make a valid deed" thereto, the vendee is not bound to accept the deed of a stranger, which, though it conveyed a good title, might yet involve the trouble and expense of an inquiry to ascertain its validity : he has a right to stand on the terms of his contract.

6. *What is reasonable time.*—A promise made on the 8th December, 1849, to make titles "within a short time" thereafter, is not complied with by tendering a deed "after the 13th October, 1851," and after the vendee had abandoned the land.

7. *Primary and secondary evidence of deeds.*—Parol evidence cannot be received to prove the existence of title to land by patent or deed, until the proper predicate is laid for its introduction.

8. *Non-residence of grantor not sufficient to authorize secondary evidence of deed.*—In a suit to which the grantee is a party, the non-residence of his grantor, of itself, does not authorize the introduction of secondary evidence to prove title in the grantee under the deed : the presumption being that the deed is in the possession of the grantee, he must be notified to produce it, or its loss or non-existence must be established, before resort can be had to inferior evidence.

APPEAL from the Circuit Court of Russell.

Tried before the Hon. JNO. GILL SHORTER.

ASSUMPSIT by John J. Hussey against Vinson P. Roquemore, on a promissory note for $300, dated August 2, 1847, and payable to the plaintiff on or before December 25, 1849 ; on which was endorsed a credit of $225, dated December 8, 1849. The only plea was the general issue, with leave to give any special matter in evidence.

On the trial, as appears from the bill of exceptions, after the plaintiff had read in evidence the note declared on, the defendant introduced two witnesses, who testified to the following facts : That the plaintiff admitted to the defendant, in their presence, after the execution of said note, that it was given in part payment of a tract of land sold by him to defendant on the day of its date, at the price of $600 for the

whole tract; that he also admitted to defendant, in the same conversation, "that he had sold him all the land down to a certain boundary line, running six feet south of a certain fence and parallel to it, and that the fence was embraced within the purchase, and stood outside of the boundary line"; that on the 8th December, 1849, in their presence, defendant paid plaintiff $225 on said note, and that plaintiff at that time agreed with defendant, that he should not pay him the balance due on said note, unless he (plaintiff) executed to him (defendant), within a short time, a valid deed for a slip of land between the true boundary line and the line designated in the purchase and sale, and that if this was not done, defendant was to be discharged from paying the balance of said note, and said note was to be void for the balance; that there was a fence very near the line of the quarter-section of land, but mostly on the south side of the line; that at the time said payment was made on said note plaintiff agreed that defendant should have said quarter-section of land surveyed, and if it was ascertained on survey that the line of said quarter-section did not reach six feet south of said fence, then plaintiff should not demand of defendant the balance due on said promissory note; that said survey was made by a competent person, and the line run by the surveyor left the said six feet out of the said quarter-section of land, and also the greater part of the said fence; that after this, defendant built another fence, north of the first-named fence and on the said quarter-section of land sold to him by plaintiff, and left said first-named fence and said strip of land outside of the enclosure; that a part of said slip of land, which contained in all from one to eight acres, had been cleared, and a part had not been cleared; that defendant never again touched the said fence, nor interfered with it or said slip of land in any way, but kept the possession of the balance of said land; that said fence, when new, would have been worth about $75, but it had been standing something like six years before the trial of this cause, and was old and worth but little when given up by defendant; and that said slip of land, as it was, would have been worth about $8 per acre.

"Plaintiff then proved, by way of rebuttal to defendant's testimony, that defendant had possession of the tract of land

in which said slip of land was, for two years from the commencement of the year 1850 ; that he and witness agreed in the years 1848 and 1849, that they should repair the first-named fence and let it remain the dividing fence between them ; that they did repair said fence, according to said agreement, and cultivated under it the two years mentioned,—the field of witness being on the quarter-section south of the fence, and embracing the six feet south of the fence, and that of defendant being on the adjoining quarter-section north, purchased by him from plaintiff ; that witness told defendant, in the conversation in which said agreement was made, that he had no claim to said six feet of land, nor to said fence ; and that said slip of land was worth about $3, and said fence was worth nothing. Plaintiff here offered to prove by said witness, that he (witness) had a patent from the United States Government, and a deed for said land from the true owner ; but said patent and deed not being produced on the trial, and their absence not being accounted for, the court excluded the testimony, and the plaintiff excepted.

"Plaintiff also offered to prove by said witness, that he (witness) was the owner of the tract of land on which said slip of land and first-named fence were, and that before defendant erected said second fence and abandoned said first fence, he (said witness) tendered to defendant, at the request of plaintiff, a deed in his (witness') own name for said slip of land, with said first fence ; but the defendant objecting to the testimony, and no deed being produced or accounted for, the court, on defendant's motion, excluded it, and plaintiff excepted.

"Plaintiff next offered another witness, who proved, that he was plaintiff's agent to tender to defendant a certain deed", which is made an exhibit to the bill of exceptions, dated October 13, 1851, signed by said plaintiff and wife, and conveying to defendant the said piece of land above described ; " that he did tender said deed to defendant after the 13th October, 1851, and after defendant had abandoned the land and fence ; and that defendant refused to accept it, knowing witness to be plaintiff's agent for that purpose. But the court, on the defendant's objection, excluded said deed from the jury, and the plaintiff excepted.

"Plaintiff next offered to read in evidence, after proof of the non-residence of plaintiff, a recorded copy of a deed from plaintiff to defendant, with all the entries thereon, to show that the land which was purchased by defendant from plaintiff in the first instance, and which corresponded in numbers with the proof of a witness in the cause, and which only called for one quarter-section of land, was thus purchased by the Government surveys, and not by a given number of acres; but the court, on defendant's motion, rejected the copy deed, because the absence of the original deed was not accounted for, nor the execution of the original deed proved; and to this ruling of the court plaintiff excepted.

"Plaintiff further proved, that, after said promissory note fell due, a witness, who was plaintiff's agent to collect from defendant the balance due on said promissory note," (*had an interview with defendant in relation to it?*) "that defendant, at this interview, refused to pay the balance due on said note; that this interview was had after the erection of defendant's new fence, and after the conversation between plaintiff and defendant in which, as defendant's witnesses stated, plaintiff agreed to make a deed to said slip of land within a short time thereafter, or to surrender the balance due on said promissory note; that defendant, at this interview, when informed by witness that he was plaintiff's agent to collect said note, and that said note would be sued to the first court of Russell county after it fell due, still refused to pay the balance due on the face of said note; that afterwards, on Sunday, at a meeting-house in Russell county, defendant did agree with witness to pay the balance remaining due and unpaid on said note, to the plaintiff when he should come out, if he (witness) would agree on the part of plaintiff that it should not be sued to the first court after it fell due, and that he (witness) might write to plaintiff, who then resided in Georgia, to that effect; that witness, as plaintiff's agent, did accordingly agree with defendant, and write to said plaintiff after said Sunday conversation, and stated about it, and that plaintiff assented to the arrangement; that said note, in consequence of defendant's said promise thus to pay it, was not sued by witness, as plaintiff's agent, to the first court after it fell due, but the term passed by before plaintiff was heard from on this point;

that plaintiff came from Georgia to Alabama, after said first term of the court had elapsed. to receive from defendant the balance due on said note, and that defendant refused to settle it with him.

"This was all the evidence; and upon this state of facts, the plaintiff asked the court to charge the jury as follows:—

"1. That defendant could not resist the payment of the balance due on said promissory note, in a court of law, while in possession of the land. This charge the court gave, but with this qualification: "That if the jury believed from the evidence, that plaintiff sold to defendant the land in controversy, down to a fixed boundary, as his own, and afterwards agreed with defendant that, if he (plaintiff) did not execute to defendant a deed for said slip of land within a reasonable time thereafter, defendant should be discharged from the payment of the balance of said promissory note; and that a reasonable time had elapsed since said *promissory note* (?) was made, in regard to the deed for said slip of land, and plaintiff had not made said deed; and that defendant had abandoned said slip of land and first fence, and had not interfered with either since; and that this was done prior to the commencement of said plaintiff's suit,—then plaintiff could not recover, even though defendant kept possession of the balance of the land'; and to this qualification plaintiff excepted.

"2. That the true measure of damages, in such a case as the present, was not the amount stipulated to be lost on said note by the plaintiff, in case he did not make a deed to defendant for said slip of land within a short time after he promised to do so, but the loss he sustained in not procuring the title to said strip of land, comparing its value with that of the other portions of the land sold by plaintiff to defendant; which charge the court refused to give, and the plaintiff excepted.

"3. That if they believed from the evidence, that plaintiff sold to defendant, in the first instance, a quarter-section of land which he did own, and a slip of land six feet in width and the extent of a quarter-section in length, which he did not own at the time of the contract or afterwards; and that defendant, after the purchase, got possession of all the land then sold, and afterwards paid plaintiff all the purchase money

that he had agreed to give for said land, except the balance due on the note sued on; and that plaintiff then agreed to make defendant a deed for said slip of land, with the appurtenances thereon, within a short time after said agreement, and that if he did not do this, the balance of said note was to be considered as paid, in lieu of said deed for said land; and that plaintiff did not execute said deed within a short time after said agreement; and that defendant left said slip of land out of his enclosures, and also said first fence, and did not afterwards assume ownership over either, but still retained possession of the other portions of the land; and that the land thus to be conveyed was not worth more than five dollars, and the fence worthless, then defendant could not recover upon said note the balance due thereon as stipulated damages, but the true measure of damages was the injury he had sustained in not obtaining said fence and slip of land. This charge, also, the court refused to give, and the plaintiff excepted.

"4. On the evidence in the cause showing a forbearance to bring suit on the note to the first court after it fell due, on defendant's promise to pay it to plaintiff's agent, the court charged the jury. that even if they believed the whole of the evidence on this point, it did not amount to an estoppel against defendant to set up any defence against the payment of the balance due on said note which existed anterior to the making of said promise; and to this charge, also, plaintiff excepted."

The rulings of the court on the evidence to which exceptions were saved, the charges given, and the refusals to charge as requested, are now assigned for error.

JAS. E. BELSER, for the appellant.

SAMUEL F. RICE, contra.

GOLDTHWAITE, J.—The qualification to the first charge given by the court, involves the question of the validity of the agreement made between the parties as to the note sued on. The evidence proved that this note, which was for $300, was originally given for land bought by the defendant from the plaintiff; that the latter, discovering he did not own a

portion of the land sold, agreed with the vendee, on receiving from him $225 on the note, that he should be discharged from the payment of the balance, unless he executed to him a valid deed for such portion within a short time thereafter; that no such deed was executed for nearly two years, and that thereupon the defendant abandoned the land to which the agreement referred; and the charge of the court was, in effect, that upon these facts the plaintiff was not entitled to recover.

There can be no doubt that, if by the terms of the original contract, it had been provided that the defendant should not pay a certain amount of the purchase money, until the vendor executed to him a valid title for the land in question, it would then fall directly within the principle of Whitehurst v. Boyd, 8 Ala. 375, and Phillips v. Longstreth, 14 Ala. 337. It is true, the general rule is, that verbal evidence is not admissible for the purpose of contradicting or altering a written instrument; but this rule does not exclude such evidence, when it is adduced to prove that such instrument is totally discharged.—Greenl. Ev. § 302, and cases there cited. If the defendant had paid the whole of the purchase money, and taken possession under the contract, a court of equity would have enforced it, by decreeing a conveyance; and if this could not have been done, on account of a want of title in the vendor, he would have been compelled to refund.—Story's Eq. § 762. This being the law, it would be singular if the parties could not, with the view of avoiding any future difficulty which might result from the failure of the vendor to obtain titles, extend the time of payment of the note, and provide that it should not be enforced if valid titles were not made within a certain time. We cannot doubt as to the validity of such an arrangement. So long as the vendee retained possession under the contract, it might operate on his part as a waiver, or extension of the time; but he was not bound to wait always, since, by doing so, he was rendering himself liable to the actual owner, and might therefore abandon the possession in a reasonable time; and if he did so, the note could not be enforced against him. The fact that the defendant retained possession of the other lands, does not affect the principle, as the subsequent agreement had no relation to them. It was the same as if no other land had been

Hussey v. Roquemore.

purchased than the piece, the failure to make titles to which it was agreed should discharge the note.

It seems to have been supposed, from the charge that was subsequently requested, that the agreement as to the discharge of the note was in the nature of a penalty ; and that, conceding its validity, the only benefit the defendant could obtain from it was, to scale the note to the amount of the actual value of the land to which titles were not made, and the fence which was upon it. But this position is not tenable. We doubt whether the doctrine can in any sense apply to an agreement of this character ; but, if it does, the plaintiff can derive no advantage from it, as the damages resulting from the failure to make a good title were uncertain. There was but a single act to be done ; and the disproportion between the value of the land to be conveyed and the amount due upon the note, if there was any, was so slight, that it could not authorize the court to declare it a penalty.—Watts v. Sheppard, 2 Ala. 425.

In relation to the defendant being estopped by his promise, made to the agent of the plaintiff on Sunday, to pay to him the balance due on the note when he should come out from Georgia, if he would not sue upon it, it is only necessary to say, that if the promise, and the action of the plaintiff upon it, would, under ordinary circumstances, conclude the defendant, it could not have that effect in the present instance ; because the promise, being made on Sunday, could, under our decisions, have no binding effect.—Saltmarsh v. Tuthill, 13 Ala. 390; Dodson v. Harris, 10 Ala. 566; O'Donnell v. Sweeny, 5 Ala. 467.

What we have said disposes of the questions arising upon the charges given and requested, and we pass to the points presented by the rulings of the court below upon the evidence.

The evidence in relation to the tender of the deed made by a third person was also properly excluded, since, under the agreement proved, the defendant was not bound to accept a deed from any other person than the plaintiff. If the title was in the party who made the tender, it might, it is true, have accomplished the object of the contract, which could only have been the transfer of a valid title ; but it might

have involved the trouble and expense of an inquiry to ascertain whether such title was good, and this inquiry the defendant was under no obligation to make. He had stipulated for a conveyance from the plaintiff; he had a right to stand upon the terms of his agreement in this respect, and was not bound to accept a tender made by a stranger.

As to the offer of the deed on the part of the plaintiff, it is to be observed, that by force of the agreement, as established by the evidence, the plaintiff was bound to execute to the defendant a valid title for the strip of land which was included in the purchase, within "a short time" from the 8th December, 1849; and if this was not done, the latter was to be discharged from the payment of the balance due upon the note; and this agreement, as we have seen, was a valid one. The record shows that the tender of the deed on the part of the plaintiff was not made until after the 13th of October, 1851, and after the defendant had abandoned the possession of the land. He was not bound to wait an unreasonable time for the plaintiff to convey, since, by doing so, he might, as we have said, subject himself to a recovery of *mesne* profits by the true owner; and we think that, under the circumstances, he was not required to wait for near two years. But however this may be, we cannot say there was error in the ruling of the court upon this point, for the reason, that although it appears that the tender was not made before the 13th October, 1851, it is impossible to say when it was made —*non constat*, but that it may have been made after the commencement of the action. The rule is, that the appellant must show error clearly; and if he fails to do so we will not presume it.

There was no error in refusing to allow proof by parol of the existence of the title to the lands by patent and deed, without first laying the proper basis for the introduction of secondary evidence. It is unnecessary to refer to cases to sustain a principle so familiar.

The only remaining question is, whether the non-residence of the grantor of a deed will, of itself, authorize the introduction of secondary evidence to prove title under it in the grantee. The presumption, in such a case, is that the deed is with the grantee, and if he is a party, as in the present case,

he must be notified to produce it, or its loss, or non-existence, must be established, before inferior evidence can be resorted to.

Judgment affirmed.

RICE, J., did not sit in this case, having been of counsel for the appellee before his election to the bench.