## DENNIS vs. SHARMAN et al.

A payment made by a debtor to one who is a merchant, on a note then due to him, on the Sabbath day, is not such acknowledgment of the debt as from which the Law will presume a promise to pay sufficient to take ine case out of the Statute of Limitations. The transaction being in violation of the Law, no binding promise, either express or implied, will be presumed therefrom, to prevent the statutory bar from attaching to the debt.

Assumpsit, in Hancock Superior Court. Tried before Judge Thomas, at the October Term, 1860.

James B. Nickelson brought suit against James H. Willey, Thomas C. Grimes, and James T. Johnson, alleging that, as partners, using the firm name of Willey, Grimes & Co., they were indebted to him the amount due on the original note, of which the following is a copy, with the credits thereon, to wit:

MARRIAGE CONTRACT MADE ON SUNDAY, VALID. "The validity of a contract executed on Sunday is to be determined alone by ine statute law in force at the time of the execution of the contract, and when the statute governing the question declares that 'no tradesman, artificer, workman, laborer, or other person whatsoever, shall do or exercise any worldly labor, business or work of their ordinary callings, upon the Lord's day (works of charity and necessity excepted),' only those contracts which may be properly included as coming within the ordinary callings of the parties thereto are affected by the inhibition of the statute. A marriage contract is not one which falls within the 'ordinary calling' of the parties to the same. The case of Sanders v. Johnson, 29 Ga. 526, reviewed and affirmed." Hayden v. Mitchell, 103 Ga. 432 (3, 4), 444.

"GREENSBORO', GA., Oct. 24th, 1837.

"On or before the 1st day of January, 1840, we promise to pay James B. Nickelson, or bearer, eight thousand nine hundred and fifty dollars, with interest from date, for value received.            WILLEY, GRIMES & CO."

"1st March, 1842, received on the within note, by James H. Willey, eight hundred and ten dollars and fifty-six cents, it being his interest in the notes and accounts of the firm of Nickelson & Willey.            J. B. NICKELSON.

"1st March, 1846, received of the within note, one hundred dollars.                              JAS. B. NICKELSON.

"28th January, 1852, received one hundred ·dollars on the within.                              JAS. B. NICKELSON."

To this suit the defendant set up the pleas of the general issue, and the statute of limitations.

Pending the action, both the plaintiff and the defendant, Grimes, who alone was served with process, died, and William T. Sharman, administrator, and Ann M. Nickelson, administratrix of James B. Nickelson, were made party plaintiffs, and Michael Dennis, administrator of Thomas C. Grimes, was made party defendant.

On the trial of the case in the Court· below, the following testimony was adduced:

*Evidence for Plaintiff.*

The note sued on, with the credits on it, was read in evidence.·

JAMES H. WILLEY, in answer to interrogatories, testified: That the credits on said note were *bona fide* for value received; that Nickelson, the payee, received the first two payments from the witness, and the third payment from George L. Willey, by the directions of witness; that witness, Thomas C. Grimes, and James T. Johnson, composed the firm of Willey, Grimes & Co., which was formed in October, 1837, and was dissolved about one year thereafter; that witness and said Johnson formed a partnership, under the firm name of Willey & Johnson, which was dissolved within two years; that witness then did business by himself; that afterwards, witness

**NOTE GIVEN ON SUNDAY.** "A promissory **note given on a Sunday is void** as **between the parties,** and a subsequent promise to pay it will not make it valid." Hill *v.* Walker, 41 Ga. 453. So as to the payment of a note given on Sunday. Bass *v.* Irvin, 49 Ga. 440.

and Nickelson formed a partnership under the firm name of Willey and Nickelson; that when Willey, Grimes & Co. dissolved, the goods on hand went into the concern of Willey & Johnson, and a portion of them afterwards went into the concern of Willey and Nickelson; witness and all these firms carried on business at the same place, being Nickelson's old stand; that when Willey, Grimes & Co. dissolved, Grimes did not draw any money from the firm, or take possession of the books, as the terms of dissolution were, that Willey & Johnson were to pay off all the liabilities of the firm of Willey, Grimes & Co.; that the credits on the note were made after the dissolution of the firm of Willey, Grimes & Co.; that the payment on the note of March 1st, 1846, was made at the desk, at the side window of the store; that witness and Nickelson's wife are brother and sister.

GEORGE L. WILLEY, in answer to interrogatories, testified: That some time between the middle of January and the first of March, the witness remitted from Madison, one hundred dollars, to be credited on a note held by Nickelson against Willey, Grimes & Co.; that the remittance was made by the directions of James H. Willey, in the year 1852, and witness does not know whether the amount was ever credited on the note or not, never having seen the original note.

THOMAS CUNNINGHAM, in answer to interrogatories, testified: That Thomas C. Grimes called on witness, who was the agent of the Southern Mutual Insurance Company, to have the life of James H. Willey insured for ten thousand dollars, giving, as a reason for so doing, that his friends were bound for said Willey to a large amount; that witness understood him to refer to the debt in favor of Nickelson against Willey, Grimes & Co.; that this occurred on the 3d of January, 1850; that Grimes did obtain insurance of the life of said Willey to the amount of five thousand dollars, which was as high as the company would go; that Grimes said tha' as Willey was a speculating, trading man, he might be able to pay it if he lived a few years; that Grimes gave, as a reason for wanting the insurance, that he was bound for a large amount for Willey; that Grimes has told witness that he had not received any consideration for said debt, and that he did not consider himself liable to pay it, and would not pay it unless compelled to do so by law.

GEORGE O. DAWSON testified: That he was well acquainted

**SERVICE, LEGAL NOTICE OR ADVERTISEMENT CAN NOT BE MADE ON SUNDAY.** "**Sunday is dies non juridicus, and service cannot be made, or legal notice given on that day,** or the business or work of ordinary callings done. Therefore, the publication of the **advertisement of a marshal's sale for taxes in a newspaper appearing on Sunday**

with James B. Nickelson; that he was a merchant in Greensboro', and esteemed and respected as a correct man; that he did not often attend church on Sunday, but remained about his store; that the first and last credits on the note are in the handwriting of Nickelson, but the second credit is not in his handwriting; that it may be in James H. Willey's handwriting, but the witness does not know Willey's handwriting well enough to determine.

## Evidence for Defendant.

The cash-book of James B. Nickelson and an almanac for the year 1846.

ISAAC L. WHITTEN, in answer to interrogatories, testified: That a short time after James H. Willey sold out his store to James B. Nickelson, Thomas C. Grimes told witness that such a sale had occurred, and that Willey had gone to Madison, and that he wanted witness to go to Greenesboro' and look through the business, and trace out their transactions, and ascertain whether he (Grimes) was liable to Nickelson on an old mercantile transaction between Nickelson and Willey, Grimes & Co., which was entered into in 1837; pursuant to this engagement, witness went to Greenesboro' on the evening before a day set apart by letters of Grimes to Willey and Nickelson, and announced to Nickelson the object of his visit; Nickelson said he was aware of witness' coming, and that he would be ready next morning; that witness called next morning and found him busy; that witness again called and found him busy, and repeated his calls until about one o'clock; that Nickelson told him that there was no necessity to go through the transactions, as Grimes was in no danger; in answer to many questions by witness, Nickelson said, that the original indebtedness was between eight and nine thousand dollars, but it had been reduced by credits; that he had purchased back the house and lot, and stock of goods, and that he had loaned Willey money to carry on the business while he was selling goods, which amount was first taken from the price of the goods purchased back, and the house and lot was taken back at twenty-five hundred dollars, and that there was then a credit to go on the note of twenty-four hundred dollars, which witness thinks was for the house and lot; Nickelson further stated, that he had neglected to place

the credit on the note, but that he would have it done; that in addition to this, Willey had left in his hands an abundance of good notes and available assets to pay off the entire debt, and that as fast as they were collected, the credits should be entered on the note, and that witness might go home and assure Grimes that he was in no sort of danger, and need not be uneasy; that witness' interrogatories are taken in this case because he has been diseased fourteen or fifteen years, with indigestion, debility, frequent and violent catarrhal affections, nervous headache, with morbid excitability, and very irregular action of the heart and arteries, and did not think that he could rely with any certainty on being able to attend Court in person; that he is general agent for Mrs. Grimes, now Mrs. Dennis, in the management of the affairs of her husband's estate; that previous·to her intermarriage with Dennis, she lived with witness, whilst he kept the books and papers of the estate, he consulted with her, and informed her generally of what was done; that the conversation with Nickelson was in 1842.

The witness stated many other things which are deemed immaterial to the issues of this case, and which are therefore omitted. The plaintiff, for the sole purpose of rebutting the evidence of Whitten, introduced the record of a case in equity in Greene Superior Court, between the parties, but the record is neither copied in the bill of exceptions, or its substance stated, and can not, therefore, be set out here.

The testimony being closed, counsel for defendants requested the presiding Judge to charge the jury, that "if they believed the payment on the note, endorsed as having been made on the 1st of March, 1846, was made on that day, and it was the Sabbath day, it could not raise a binding promise to pay the debt, so as to take it out of the statute of limitations."

This charge the Judge refused to give, and counsel for defendant excepted.

The presiding Judge, amongst other things, charged the jury:

"That it was not necessary for the promises to pay the debt to be in writing, and that the statute of limitations of 1856 did not apply to this case; but if the payments were made on the note, by either of the parties in the firm of Willey, Grimes & Co., at the time they are dated, and within

the statute of limitations, the law will imply a promise to pay, and it need not be written.

To this charge defendants excepted.

The jury returned a verdict in favor of the plaintiff, for the amount of the note sued on.

Counsel for the defendant then made a motion for a new trial, on the following grounds, to wit:

1st. Because the Court erred in refusing to charge as requested by counsel for defendants, as hereinbefore set forth.

2d. Because the Court erred in charging the jury as hereinbefore stated.

3d. Because the verdict for the plaintiff is decidedly and strongly against the weight of evidence.

4th. Because the verdict is contrary to law.

The presiding Judge overruled the motion, and refused the new trial. This decision is the error alleged in the record in this case.

T. R. R. COBB, and WASDEN & NELMS, for plaintiffs in error.

TOOMBS and A. H. STEPHENS, for defendants in error.

*By the Court.*—LYON, J., delivering the opinion.

The main issue between the parties in this case is: Whether the cause of action of defendants in error was barred by the statute of limitations at the commencement of the suit? and that depends, for the present, at least, upon the question, whether the credit endorsed on the note sued upon, of the date of 1st March, 1846, of one hundred dollars, is such an acknowledgment of the existence of the debt, at that time, as from which a valid promise to pay the debt, either expressly or by implication, may be presumed, so as to constitute a new point, from which the statute should then begin to run anew?

It is claimed by the plaintiff that it is not, for two reasons:

1st. That no such payment was in fact made at that time.

2d. That if the payment was actually made, that it was made on Sunday—the first day of March, 1846, being the Sabbath day—and that no binding promise to pay the debt, either expressly or by implication, could be raised from a

payment on that day, either to take the case out of the statute of limitations, or to make a new point from which the statute should begin to run, but that such acknowledgment, however explicit for that purpose, was void and of no effect.

The first question is one of fact, and, therefore, more appropriately for the consideration of a jury; and as there is a conflict of evidence on the point, we deem it best not to express our opinion on it, especially as we shall send the case back on another point, when the same question will, or may, be submitted to another jury.

As to the second question on that point, the plaintiff in error requested the Court below to charge the jury, that "if they believed the payment on the note, endorsed as having been made on the first March, 1846, was made on that day, and it was the Sabbath day, it could not raise a binding promise to pay the debt, so as to take it out of the statute of limitations." This charge the Court refused to give, and this refusal forms the main ground of complaint to the rulings of the Court in this case.

The legal effect of a partial payment on an existing debt by a debtor is, not only to reduce the amount of the debt to that extent, but from that act the law implies an acknowledgment that the whole debt is due and owing, and from this acknowledgment a promise of payment is presumed, that is binding on him who makes the payment, as well as all others standing in the same relation to the debt as himself. It is upon this principle or presumption, and none other, that a valid partial payment constitutes a new point from which the statute of limitations must run, instead of from the time when the debt first became due. And it is now too firmly established by judicial precedent to be shaken or overturned, although it has been gravely doubted by the most eminent judges and lawyers as an innovation by the Courts on the statute of limitations. But do these legal consequences or presumptions flow from a partial payment made on the Sabbath day? Whether they do or not, depends entirely upon the question, whether the act so done on that day is prohibited by law? for if the act—that is, the payment on that day—was in violation of, or prohibited by, law, then all contracts, obligations and promises, either express or implied, growing out of, or dependent on, the act, is null and void, whether so declared to be by the law of which the act was

in violation or not. This has been the uniform ruling of the Courts, where the common law is of force, since *Drury vs. Defontaine,* 1 *Taunt.* 135, where it is said by Lord Mansfield, "if any act is forbidden under a penalty, a contract to do it is now held void," and such has been the constant doctrine of this Court. A familiar instance of which may be seen in the many adjudications in respect to the Statute of 32 *Hen. VIII,* or *"The bill of Bracery or Buying of Titles,"* as it is sometimes called. That Act does not declare deeds made in violation of its provisions to be void, but affixed a penalty to the making or buying titles adversely to the possession. This Court uniformly held the deeds to be void, not because the law declared them to be so, but because the act was prohibited. If an act is prohibited or a penalty affixed by statute to the doing of an act, no valid contract, obligation or promise can be entered into, created or made, either expressly or by implication, that has its foundation in the violation of such law. The case put by counsel in the argument, under the law against usury, is not an exception; for in that case, it is only the interest that is declared to be void; the principal is expressly authorized by the statute to be recoverable. Now, was this payment of 1st March, 1846 —that being the Sabbath—a violation of any law then in force in this State? We are clear that it was. The first clause of the second section of "An Act for preventing and punishing vice, profaneness and immorality, and for keeping holy the Lord's Day, commonly called Sunday," approved March 4th, 1762, is in these words:

"No tradesman, artificer, workman, laborer or other person whatever shall do or exercise any worldly labor, business or work of their ordinary callings on the Lord's day, or any part thereof; (works of necessity or charity only excepted); and that every person being of the age of fifteen years and upwards, offending in the premises, shall, for every such offence, forfeit the sum of ten shillings."

Nickelson, the defendant's intestate, to whom the payment was made, and to whom the note belonged, was at the time a merchant in the town of Greenesboro', and the payment was made to him by Willey, on the 1st March, 1846, at the desk of Nickelson, in his store; and the further proof is, that that day was the Sabbath day. The cash-book of Nickelson, that was in evidence, shows that he was daily (Sundays

excepted) in the habit of receiving, collecting and paying out money; that was his ordinary calling—his daily business. The receipt of this money on this note by Nickelson, as a payment to him, was in the exercise of his worldly business; was a work of his ordinary calling—not of charity or necessity, and was therefore plainly and emphatically within the letter and spirit of the Act which it intended to prohibit and suppress. Hence, according to the rule we have stated, no valid and binding promise to pay the debt, either expressly or by implication of law, can be presumed from such illegal act; or if a new promise can be presumed, it is null and void, and does not take the case out of the statute of limitations, or constitute a new point from which the statute should begin to run.

The Statute of 29 *Car. II, chap.* 7, §6, enacts that "no person whatsoever shall do, or exercise, any worldly labor, business or work of their ordinary callings upon the Lord's day." Under that statute, the British Courts have uniformly held, that all contracts or obligations made on that day, or which grew out of, and depended upon, acts done upon that day, in violation of the statute, were void, and could not be enforced. There has been some difference, at different times, and by different Judges, as to what acts done on that day were within the prohibition; for instance, it was held in some of the cases, perhaps the majority, that unless the act done, out of which the contract grew, was of the ordinary calling of the party to be affected by the act, that the contract was not void. In others, again, it was held that all contracts based upon acts done on the Sabbath day, of a worldly business, were void (unless of charity or necessity), whether of the ordinary callings of the parties or not. *See Drury vs. Defontaine,* 1 *Taunt.* 135; *Tennell vs. Ridler,* 11 *Eng. C. L.* 261; *Smith vs. Sparrow,* 12 *Eng. C. L.* 253; 52 *Eng. C. L.* 479. It is altogether unnecessary to inquire which class of these decisions is the better construction of the statute, as either of them is equally fatal to the defendants in error. Similar statutes to that of 29 *Car. II, ch.* 7, §6, and of ours of 4th March, 1762, to enforce an observance of the Sabbath, have been passed by many of our sister States, and in all of them, I believe, when the question has been made, the Courts have held contracts made on that day to be void, whenever the acts done on which the contract depended

were prohibited by the statute. *O'Donnell vs. Sweeney*, 5 *Ala.* 467; *Dodson vs. Harris*, 10 *Ala.* 568; *Saltmarsh vs. Tuthill*, 13 *Ala.* 402; *Hussey vs. Roquemore*, 27 *Ala.* 289; *Bumgardner vs. Taylor*, 28 *Ala.* 678; *Towle vs. Larrabee*, 26 *Maine*, 468; *Frost vs. Hill*, 4 *N. H.* 157; *Lyon vs. Strong*, 6 *Verm.* 219; *Wright Geer*, 1 *Root*, 474; *Fox vs. Abel*, 2 *Conn.* 584; *Story vs. Elbert*, 8 *Con.* 27; *Adams vs. Hamell*, 2 *Doug.* (*Mich.*) 73; *Sink vs. Clement*, 7 *Blkford*, 479; *The City of Cincinnati vs. Rice*, 15 *Ohio*, 225.

But it is insisted that this was not a contract—not an obligation to pay money, growing out of any agreement then made to do so, or of a thing done in violation of the Sabbath day, but that it was a mere admission that the debt was then due; that it had not been paid, and that it was as competent to make such admission on that day as any other, and that when so made, it was as competent and legal to use such admission against the parties, as evidence of the existence of the debt at that time, as though it had occurred at any other time, and that to hold otherwise, is to hold that a party could not tell the truth on Sunday.

If it was true that the defendants only proposed to use the credit as evidence of an admission that the debt was then due and had not been paid, but was an existing debt, there could be no serious objection to it for that purpose; but that is not the use proposed to be made of this credit, but a much more important and extended one; and that is, as an acknowledgment of that character from which, in the eye of the law, a promise to pay the balance of the debt is presumed. As proof of the existence of the debt at the date of the credit, it was valueless; for it was a debt without the credit. It had not been paid, or barred by the statute, and so it could have been made to appear, whether a payment was made or not. The argument of counsel rests on the idea that anything that negatives the idea of payment, excludes the operation of the statute from the time the debt is proved to be in existence. Such an idea is altogether fallacious, for, if allowed, it would wholly defeat the statute. This argument is in accordance with what the Courts at one time held, that an acknowledgment defeated the statute by repelling the presumption of payment. Upon this construction it was held that an admission would prevent the bar, although it was coupled with a refusal to pay and a distinct avowal to claim the benefit of

the statute; but such a principle has long since been exploded, and it is now fully established that an acknowledgment to prevent the operation of the statute, must be so made as to amount, in the eye of the law, to a new promise, or from which the Court can presume a promise. *Ang. on Lim* 218; *Tillinghast Bal.* 190; *Prince vs. Boisselet, 9 S. & R.* 131; *Hudson vs. Carey,* 11 *id.* 10; *Baily vs. Baily,* 14 *id.* 195; *Dean vs. Pitts,* 10 *Johns. Rep.* 195; *Johnson vs. Beardslee,* 15 *Johns.* 4; *Martin vs. Williams,* 17 *id.* 331; *Bangs vs. Hall,* 21 *Pick.* 323; *Perley vs. Little,* 2 *Greenl.* 97; *Atwood vs. Colburn,* 4 *N. H.* 315. From these authorities it is safe to say, that mere proof of the continued existence of the debt does not stop the running of the statute, but the acknowledgment must contain an express promise to pay, or be so unequivocal that the law will imply a promise; so that at last it is the promise, whether express or implied, that saves the case from the operation of the statute, and nothing short of that. If, then, the promise relied on to take the case out of the statute is made or inferred from an act done in violation of a public law, as this was, such promise is void, or rather the law will not presume a binding promise from such illegal act. The identical question involved in this case was decided by the Supreme Court of the State of Alabama, in *Bumgardner vs. Taylor,* 28 *Ala. Rep.* 787. In that case, suit was brought on two notes, to both of which the statute of limitations was plead. The plaintiff, to take the case out of the statute, proved the promise of the defendant to haul cotton to pay the notes. The promise was made on Sunday, and at the time, the statutory bar had attached to one of the notes; to the other it had not, but had before suit brought. On these facts, the Court held—WALKER, J.: "The only question of this case which it is necessary for us to notice is, whether a promise made on Sunday will take a contract out of the statute of limitations? So far as this question is concerned, then, there is no distinction between a promise made in the words of the party and the promise which is implied from a distinct admission of the justness of the debt and a liability to pay it. It would be unreasonable to place the promise inferred from an admission upon a more favorable footing for the creditor than a promise distinctly and designedly made." And after reciting the decision of that Court in *Hussey vs.*

*Roquemore, 27 Ala.* 289, the Court adds: "The question in this case is settled by the principle involved in that decision, and that the judgment of the Court below, ruling the promise void and ineffectual to take the case out of the statute of limitations, because made on Sunday, should be affirmed." In *Hussey vs. Roquemore,* the debtor promised an agent of the plaintiff, on Sunday, at church, that if he would not sue him on the plaintiff's debt to the next term of the Court, he would pay it. The plaintiff acted on this promise, and did not sue. Subsequently, on suit brought, the plaintiff relied on this promise. The Court decided that it was void, and not binding on the defendant, because made on Sunday, in violation of a statute of that State that prohibits all "worldly labor, business or employment, ordinary or servile work (works of necessity and charity only excepted) on the Christian Sabbath;" to which is affixed a penalty of two dollars for each offence against the same.

Counsel for the defendant in error refers to *Sanders vs. Johnson, 29 Ga.* 528, as an adjudication of the question involved in this case. We do not think so. The decision in that case was put upon the ground expressly, that the case was not within the provisions of the Act of the 4th March, 1762. This we hold to be within the letter and spirit of that Act.

The charge requested ought to have been given. If the credit was made on Sunday—and it is not denied but that it was—it can not serve to prevent the statutory bar from attaching to the debt.

Plaintiff in error also excepted to the charge of the Court as given—"that it was not necessary for the promises to pay the debt to be in writing, and that the statute of limitations of 1856 did not apply to this case." But this point was withdrawn by counsel for plaintiff in error, in the argument.

## JUDGMENT.

Therefore, it is considered and adjudged by the Court, that the judgment of the Court below be reversed, upon the ground that the Court erred in refusing, upon the request of counsel for defendant, to charge the jury that if they believed the payment on the note endorsed as having been made on the 1st March, 1846, was made on that day, and it was the Sabbath day, it could not raise a binding promise to pay the debt so as to take it out of the statute of limitations.