SARAH DONOVAN vs. DANIEL McCARTY.

Suffolk.    November 11, 1891. — February 25, 1892.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, &
BARKER, JJ.

*Equity — Assignment of Personal Property — Lord's Day.*

If the ground on which a bill in equity is dismissed is not stated in the decree, the
burden is on the plaintiff, upon a report of the case, to show that, upon the
facts which appear, he was entitled to a decree in his favor, and that the court
was bound to enter such decree, no matter what may have been the facts which
do not appear.

An assignment of personal property in trust, executed on the Lord's day by a
single woman eighty years old while in a hospital and suffering from severe
injuries, for her own benefit, comfort, and support during life, for her funeral
expenses and a burial lot, and for the celebration of masses for the benefit of
her father, brother, and herself, any balance to belong to the assignee, may
properly be found to be a work of "necessity" or "charity," within the Pub.
Sts. c. 98, § 2.

BILL IN EQUITY, filed in the Superior Court, to set aside an
assignment made by the plaintiff of certain savings-bank books
to the defendant, on the grounds, first, that the assignment was
procured by fraud; secondly, that it was illegal, as made on
the Lord's day. The bill alleged the following facts.

The plaintiff, a single woman eighty years of age, on January
25, 1890, was taken to the City Hospital, Boston, on account
of severe burns which she had accidentally suffered. On Sun-
day, February 9, following, while feeble, and still suffering from
her injuries, one Daniel McCarty, the husband of her cousin,
came unsolicited with his lawyer to the hospital and induced
her to sign a paper, which she understood to be in the nature of
a will, making provision for her support while she lived, and for
the care of her body, and for masses to be said after her death.
Her property consisted of what she had saved from her earnings
and deposited in certain savings banks. Her savings-bank
books she intrusted to the defendant, and at his request, with-
out consideration, signed the paper which he had drawn up for
her by his lawyer, on the understanding and assurance from
him that if she got well and came out of the hospital he would

redeliver the books to her, and that the paper by her signed should become null and void. This paper, which was dated "Boston City Hospital, Boston, February 8, 1890," and signed by the plaintiff, after setting forth the transfer and assignment by the plaintiff to McCarty of the savings-bank books and the deposits represented by them "in consideration of value received," contained the following: "I hereby deliver the said books to said McCarty, and I direct that the several banks treat him as the legal owner. This transfer, however, is made in trust, that he use the said moneys during my natural life for my benefit and reasonable comfort and support; that from whatever remains at my death he shall pay for my funeral expenses, and, if necessary, for a burial lot, and one high mass to be celebrated soon after my death, and a low mass annually on the anniversary of my death for twenty years for the benefit of my father and my brother and myself. Other than the above, the property shall be and remain his property absolutely, to be disposed of after my death as he may see fit."

On March 12, 1890, the plaintiff was discharged from the hospital, and afterwards she demanded the bank-books from the defendant, who surrendered them to her. Subsequently she drew from one of the banks the money there deposited, but the defendant then notified the other banks of the assignment, and made it impossible for her to draw out the moneys deposited by her in the other savings banks whose books she held. The answer contained a denial of all the allegations of the bill except that the defendant went with his lawyer, on February 9, 1890, to the City Hospital, and that the plaintiff at that time executed the assignment in question.

Hearing before *Dewey*, J., who reported the case for the determination of this court, as follows:

"No evidence was offered sustaining the allegation of fraud. There was evidence — and I find that the assignment, which was under seal, was read over to the assignor — that she knew the contents, and then and there executed the same, and delivered it with the bank-books to the defendant, and that there was no fraud or deceit practised in the procuring or making of the assignment and delivery of the books. I further find that the assignment, though dated February 8, 1890, was made, exe-

cuted, and delivered with the bank-books on February 9, 1890, the Lord's day, in the forenoon of that day. Afterward, on a secular day, said Sarah Donovan had conversation with the defendant and his daughter in regard to said assignment and delivery to him of said bank-books, and expressed her satisfaction with what had been done. I ordered the bill dismissed, from which order plaintiff appealed, and at her request I now report the case for the determination of the Supreme Judicial Court."

The decree entered by the Superior Court was as follows: " This case came on to be heard at this sitting, and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged, and decreed that the bill be and is dismissed."

The case was submitted on briefs, in November, 1891, to all the judges, except *Field,* C. J.

*F. S. Hesseltine,* for the plaintiff.

*J. A. Maxwell & S. H. Hudson,* for the defendant.

ALLEN, J. The court having found that there was no fraud in the transaction which the plaintiff seeks to set aside, and that the assignment was executed with knowledge of its contents, the plaintiff now contends that it was illegal, because executed on the Lord's day, and that it may be revoked. The defendant, on the other hand, contends, (1) that it was not illegal for that reason; (2) that, if it was, the assignor participated in the illegality, and cannot be allowed to set it up as a ground for avoiding the transaction; and (3), that afterwards there was a new agreement to the same effect on a secular day.

The ground on which the bill was dismissed is not mentioned, but it is for the plaintiff to make it appear that the decree was wrong, and that neither ground of defence was valid. In other words, the plaintiff has the burden of maintaining that upon the facts which appear she had a right to a decree in her favor, and that the court was bound to enter such decree, no matter what may have been the facts in other particulars not stated. We do not think the plaintiff has sustained this burden.

By Pub. Sts. c. 98, § 2, whoever on the Lord's day " does any manner of labor, business, or work, except works of necessity and charity," is punishable ; and by § 3, " whoever travels on

the Lord's day, except from necessity or charity," is also pun- ishable. These statutes have long been in force, and numerous cases have arisen under them. In *Bennett* v. *Brooks*, 9 Allen, 118, it was held that the execution of a will is not within the general prohibition of the statute. The court say, " The Legis- lature did not intend to carry the prohibition further than to restrain the exercise of all those occupations and employments which make up the common and daily business of mankind, and such dealings and bargains as properly and usually appertain thereto "; and again, " All business was intended to be prohib- ited on the Sabbath which might fairly be deemed to be an employment or calling carried on for purposes of gain or profit, and all transactions and dealings connected therewith, or such as are usually incidental thereto. But beyond this no just rule of interpretation can extend the provisions of the statute. . . . It does not embrace within its prohibition every act which is not of a sacred or religious character, although it may not be required by necessity or charity." The court also intimates that it would be strongly inclined to hold that the execution of a will would fall within the exception as a work of necessity or charity; but the decision rests on the ground that the act is of an occasional and exceptional character, and not embraced within the general words of prohibition. See also, in relation to wills, *George* v. *George*, 47 N. H. 27 ; *Beitenman's appeal*, 55 Penn. St. 183 , *Rapp* v. *Reehling*, 124 Ind. 36.

The controversy in the present case is in relation to an instru- ment of assignment, which in its purpose and character much resembles a will. It was an instrument as much out of the common course of things as a will. It was an assignment of property in trust, for the benefit, comfort, and support of the assignor during life, for funeral expenses and a burial lot, and for the celebration of masses for the benefit of her father, brother, and herself; and this being done, the remainder to belong to the assignee. It was executed at the City Hospital. The bill avers that the assignor was a single woman, eighty years of age, and that she was taken to the hospital on account of severe in- juries. The defendant's general denial includes these averments, and to that extent weakens his case, so far as this phase of it is concerned. But if the court found the plaintiff's averments to

be true, it may also have found that there was such an emergency as to show a reasonable necessity for immediate action.

The distinction whether an act is outside of the general prohibition of the statute, or is within the exception as a work of necessity or charity, is not always clearly drawn in the decisions. Acts of necessity or charity are in express terms excepted from the prohibition, and other acts not strictly of necessity or charity may also, according to the doctrine of *Bennett* v. *Brooks,* be excepted by implication, on the ground that the Legislature did not intend to include them in the prohibition. The words "necessity and charity" have never received a very strict construction, and it has been said that they cover everything which is morally fit and proper to be done under the peculiar circumstances of the case. *Doyle* v. *Lynn & Boston Railroad,* 118 Mass. 195, and cases cited. *Stone* v. *Graves,* 145 Mass. 353. So in the statute relating to travelling, it has been declared that the question whether it was an act of necessity or charity is to be determined, to a great extent, by considerations of moral fitness and propriety, and that in most cases it should be submitted to the jury with proper instructions. *Smith* v. *Boston & Maine Railroad,* 120 Mass. 490. *Feital* v. *Middlesex Railroad,* 109 Mass. 398, 404. It would at once be assumed by all, that in great emergencies, as in case of fire, flood, tempest, war, wrecks, accidents to man, beasts, or property, both travel and labor are lawful. The work of clergymen, physicians, nurses, apothecaries, and undertakers is also by general concession within the exception. The work of those employed in furnishing articles of daily and general need, like gas, water, milk, mails, telegrams, the Monday morning newspapers, has at least a certain popular sanction as permitted labor. Among other acts which have been held not to be, or at least not necessarily to be, in violation of the statutes, are the following: to repair the highway; *Flagg* v. *Millbury,* 4 Cush. 243; to carry the mail; *Commonwealth* v. *Knox,* 6 Mass. 76; to visit the sick; *Doyle* v. *Lynn & Boston Railroad,* 118 Mass. 195; *Gorman* v. *Lowell,* 117 Mass. 65; *Cronan* v. *Boston,* 136 Mass. 384; to visit children or parents; *McClary* v. *Lowell,* 46 Vt. 116; *Logan* v. *Mathews,* 6 Penn. St. 417; to walk or drive for exercise, *Hamilton* v. *Boston,* 14 Allen, 475; *Barker* v. *Worcester,* 139 Mass, 74; *Sullivan* v. *Maine Central Railroad,* 82 Maine, 196, and cases

there cited; *Nagle* v. *Brown*, 37 Ohio St. 7; to attend a funeral; *Horne* v. *Meakin*, 115 Mass. 326; to shave an old man who could not shave himself; *Stone* v. *Graves*, 145 Mass. 353; to contract for the relief of a sick pauper; *Aldrich* v. *Blackstone*, 128 Mass. 148; to pilot in a vessel; *Perkins* v. *O'Mahoney*, 131 Mass. 546; to bring home a cook; *Crosman* v. *Lynn*, 121 Mass. 301; to carry home a visitor; *Buck* v. *Biddeford*, 82 Maine, 433; to gather in maple sap; *Whitcomb* v. *Gilman*, 35 Vt. 297; to drive one's master to church; *Commonwealth* v. *Nesbit*, 34 Penn. St. 398; to open the locks of a canal for boats to pass; *Murray* v. *Commonwealth*, 24 Penn. St. 270; and to load a vessel in order to avoid the close of navigation; *McGatrick* v. *Wason*, 4 Ohio St. 566.

For illustrations of acts somewhat near the line, but held to be within the prohibition of the statutes, see *Commonwealth* v. *Sampson*, 97 Mass. 407; *Commonwealth* v. *Josselyn*, 97 Mass. 411; *Stanton* v. *Metropolitan Railroad*, 14 Allen, 485; *McGrath* v. *Merwin*, 112 Mass. 467; *Smith* v. *Boston & Maine Railroad*, 120 Mass. 490; *Bucher* v. *Fitchburg Railroad*, 131 Mass. 156; *Davis* v. *Somerville*, 128 Mass. 594; *Hamilton* v. *Austin*, 62 N. H. 575.

Without enumerating further decisions, it seems to us that the judge before whom the trial was had might rightly find the act of making the assignment on the Lord's day to be lawful. Further than this the case before us does not call upon us to go.

It is not necessary to consider the other grounds of defence.

*Decree affirmed.*