Hillsborough, }
Nov. 1, 1932. }

MAUDE C. LAWRENCE *v.* HOWARD C. FARWELL, *Ex'r.*

*Wason & Guertin* and *Doyle & Doyle* (*Mr. Guertin* orally), for the plaintiff.

*Hamblett & Hamblett* and *Robert W. Upton* (*Mr. Robert B. Hamblett* orally), for the defendant.

BRANCH, J. 1. The defendant seasonably moved for a directed verdict "as to each and every item" of the plaintiff's specification "because upon the evidence a verdict for the plaintiff would not be warranted." So far as this motion called for a ruling that upon no possible view of the evidence could the plaintiff recover anything, it was properly denied. The evidence of both parties demonstrated that for many years before the death of the testator the plaintiff worked for him as a house keeper, and there was evidence that upon three occasions, at least, the testator made statements in which he acknowledged his obligation to pay for these services. The plaintiff's employment continued up to the moment of his death on January 24, 1927, and it is obvious that the statute of limitations furnished no defence to that portion of the plaintiff's claim which accrued within six years of that date. P. L., c. 329, s. 3.

2. The defendant argues, however, that since his motion was specifically directed against every item in the specification, the court should have withdrawn from the consideration of the jury "all matters prior to six years before January 24, 1927," because there was no evidence of a new promise to interrupt the running of the statute of limitations. This argument is without merit. There was evidence that in 1925 the plaintiff left the home of the deceased and went to

live with her daughter in Leominster, Massachusetts. Thereafter the deceased went to see her several times and urged her to return to his house. There was evidence that upon one of these occasions the plaintiff "told him she wouldn't come back unless he would settle up all the wages that he owed her," and that upon one of his visits the deceased told her that "if she would come back he would make things all right with her and settle up with her." It did not clearly appear that these two statements formed parts of the same conversation although it seems to be assumed by the parties that they did. A week after the talk last reported, the plaintiff did return to the decedent's house and remained with him until his death. This evidence alone was sufficient to support a finding, not only of a new promise, but of a new contract to pay a pre-existing debt.

There was also evidence that on the day of his death, testator executed an order giving the plaintiff access to his deposit box in the Townsend National Bank and directed her "to get two bank books and certificate of deposit which he was going to endorse over to her; . . . for her wages"; that the plaintiff secured the bank books and certificate of deposit as directed, but that the testator died before he could execute the assignments. This evidence would also justify a finding that the testator then admitted the existence of a subsisting debt which he was liable and willing to pay, and from this admission a new promise to pay might be inferred by a jury. *Levensaler* v. v. *Batchelder*, 84 N. H. 192, 194 and cases cited.

3. The defendant also takes the position that both "the alleged promise of 1927 and that of 1925 occurred on Sunday, and could, therefore, be of no avail to remove the bar of the statute of limitations," and in support of this argument we are referred to cases which hold that "Part payment of a note on Sunday, and an indorsement of it on the same day, are not evidence of a new promise to remove the bar of the statute of limitations." Head note to *Whitcher* v. *McConnell*, 59 N. H. 470; *Clapp* v. *Hale*, 112 Mass. 368; *Bumgarder* v. *Taylor*, 28 Ala. 687; *Dennis* v. *Sharman*, 31 Ga. 607.

If the motion for a directed verdict plus the reasons stated in its support were technically sufficient to raise this question, the record contains no intimation that it was brought specifically to the attention of the court, and in order to dispose of the exception to the denial of the motion it is unnecessary to pass upon the soundness of the rule asserted by the defendant, since the evidence does not disclose a state of facts which would justify an application of such a rule.

In regard to the transaction of 1927, it would not necessarily follow

that the statute had been violated if all the acts mentioned in the testimony had been done on Sunday. The testator was then on his death bed and the arrangements made by a dying man for the disposition of his property might well be found to come within the category of "works of necessity" which are excepted from the prohibition of the statute. P. L., c. 385, s. 3. Thus in *Donovan* v. *McCarty*, 155 Mass. 543, it was held that an assignment of personal property in trust executed on Sunday by a woman 80 years old might be found to be a work of necessity, and the same result has been reached in regard to the execution of wills. *Beitenman's Appeal*, 55 Pa. St., 183; *Weidman* v. *Marsh*, 4 Clark (Pa.) 401. See also *George* v. *George*, 47 N. H. 27, 42.

Furthermore, although the directions to the plaintiff which the witness overheard were given on Sunday, the testator did not sign the order giving the plaintiff access to his deposit box or dispatch her on her errand to the Townsend bank until Monday morning, and the words spoken by him on Sunday were chiefly important for the purpose of giving character and significance to these indubitably legal acts. A contract finally executed on a week day is valid although the offer was made on Sunday (*Stackpole* v. *Symonds*, 23 N. H. 229; *McDonald* v. *Fernald*, 68 N. H. 171), and by parity of reasoning, acts done on a week day must be subject to explanation by reference to conversations which took place on Sunday.

Similar considerations apply with added force to the incident which took place on Sunday in 1925. The witness reported a conversation between the deceased and plaintiff as follows: "Mr. Farwell told her, as he was getting ready to go, if she would come back he would make things all right with her and settle up with her, and she told him she would let him know. Q. She told him she would let him know? A. That she would let him know something that week." The net effect of this conversation was that the deceased proposed a new contract with the plaintiff and she took the matter under advisement. No promise of the testator to pay a pre-existing debt could be inferred from this talk alone, since the suggestion of payment was expressly conditioned upon the plaintiff's return to his house. When the plaintiff a week later complied with the condition, however, by again taking up her abode with him, it was proper to conclude that the transaction had been completed by the acceptance of the offer, and the legality of the new agreement would not be affected by the fact that the offer was made on Sunday. *Stackpole* v. *Symonds, supra.*

4. The first item in the plaintiff's specification covered the period from October 1, 1906, to October 1, 1915, and the defendant now

argues that it was error to deny the motion for a directed verdict "as to the first three years, 1906-1909, appearing in the plaintiff's specification. There was no evidence that the relationship subsequently existing between Mr. Farwell and Mrs. Lawrence commenced prior to 1909." This argument may be briefly answered. Frank B. Farwell, a brother of the deceased, testified that the plaintiff kept house for the testator "20 odd years." Since the testator died January 24, 1927, this testimony would clearly carry the term of her services back to 1906, and other items of evidence which need not be quoted, tend strongly to confirm this conclusion.

We, therefore, conclude that the motion for a directed verdict was properly denied. The verdict must be set aside, however, because of errors committed in the course of the trial.

5. One of the points hotly contested by the parties was the question whether the plaintiff removed from the testator's deposit box two bank books and a certificate of deposit in accordance with his written order to the bank and the reported instructions of the deceased. The president of the bank, called as a witness for the plaintiff, testified that he was present when she opened the box and that he made on the back of the order a memorandum of things taken from the box by her; that he could not swear that nothing else was taken; that he had no recollection of what was taken independent of the memorandum; that the memorandum did not refresh his recollection but that he made it as a true record of what he observed to be taken from the box. The memorandum was admitted in evidence subject to the plaintiff's exception. It read as follows: "Took out several deeds." The court charged the jury that this memorandum was "not evidence of what was withdrawn from the box, but merely serves as a written memorandum which he is permitted to use to refresh his recollection. You will not regard the pencil notation as any evidence as to what was withdrawn from the box." To this instruction the defendant duly excepted.

The foregoing portions of the charge were clearly erroneous. All the requisites for the admission of the memorandum as the past recorded recollection of the witness were supplied by his testimony and it should have been submitted to the jury as substantive evidence of the facts stated therein. 2 Wig., Ev. *ss.* 734-764; *Precourt* v. *Driscoll,* 85 N. H. 280, 281; *State* v. *Iacavone,* 85 N. H. 207, 209; *Graves* v. *Railroad,* 84 N. H. 225; *Richardson* v. *Railroad,* 80 N. H. 370, 372; *Pinkham* v. *Benton,* 62 N. H. 687; *Watts* v. *Sawyer,* 55 N. H. 38; *Kelsea* v. *Fletcher,* 48 N. H. 282; *State* v. *Shinborn,* 46 N. H. 497;

*Webster* v. *Clark,* 30 N. H. 245, 253; *Haven* v. *Wendell,* 11 N. H. 112.

6. Subject to the defendant's exception, evidence was admitted as to the amount which the deceased paid to his estranged wife for her support under an agreement and later under a court order for separate maintenance. No theory upon which this testimony could aid the jury in determining whether the plaintiff had a legal claim for services against the estate of the deceased has been suggested by counsel, and the court is unable to discover any legitimate purpose which could have been served by it. The evidence should have been excluded. It is now suggested, however, that "there was nothing prejudicial in the admission of the evidence." Inasmuch as the verdict must be set aside for other reasons, this suggestion does not require extended consideration. Plaintiff's counsel, by securing the admission of this evidence, must have intended, however, to accomplish some result favorable to his client, and it hardly lies in his mouth now to argue that the testimony, which was introduced at considerable length over the repeated objections of the defendant, had no effect upon the minds of the jury.

7. Subject to the defendant's exception, the plaintiff was permitted to testify as to the details and circumstances of her delivery of the testator's personal effects to the executor. It is now argued that, since the executor did not elect to testify, this evidence was inadmissible according to the provisions of P. L., c. 336, s. 27. This argument cannot prevail. The plaintiff did not testify "to facts which occurred in the lifetime of the deceased," (*Ib.*) and the statute was not violated even though her testimony tended to corroborate that of other witnesses as to the conduct of the deceased. The legislature has not undertaken to provide that the retrospective significance of events occurring after the death of the deceased shall be kept from the triers of fact. The present case is clearly distinguishable from *Bean* v. *Bean,* 71 N. H. 538, where the plaintiffs in interest were not permitted to testify to the contents of a memorandum alleged to have been made by the deceased. The fact that they claimed to have had the memorandum in their possession after his death did not obscure the true character of this testimony as evidence of a fact occurring in the lifetime of the deceased.

8. The defendant offered to show that since 1918 or 1919, the plaintiff "has had a large sum of money at her disposal . . . and that she has been drawing a substantial income from it." With reference to this offer the court made the following ruling: "If any of this money came from the Farwell estate, you are permitted to show it. I don't

think it is enough to simply show she had money and then ask the jury to speculate where it came from." It is now argued that this "evidence was . . . admissible to show whether a contract of employment existed. In seeking to know whether the parties sustained a contractual relation, the means of each of them was important." This argument is entitled to little weight. The suggestion that a woman with money in the bank would not make a contract to work for wages is not in accord with common experience, and whether the offered evidence "had any legitimate bearing on the issues submitted to the jury was a question of remoteness determinable at the trial term. Its exclusion was not error." *Beckman* v. *Souther*, 68 N. H. 381; *Bunten* v. *Davis*, 82 N. H. 304, 309, 310.

9. With reference to the question of a new promise, the court instructed the jury in part as follows: "If you find that there was a new promise within six years of his death, she is entitled to recover all that is due and which has not been paid." To this instruction the defendant excepted as follows: "Defendant excepts to the instruction that if there was a new promise made within six years she is entitled to recover all that is due and that has not been paid. We maintain if there is any evidence of a new promise, what would be covered by it, included by it is a question of fact for the jury." It is now argued that if a new promise was made, the language used was ambiguous and the extent of the obligation undertaken was doubtful and that "the question should be submitted to the jury as to what language was used, and how it was understood, with proper instructions." We do not think that the evidence in regard to the testator's acknowledgments of indebtedness to the plaintiff, which has been summarized above, called for the submission of these questions to the jury. On one occasion he said he would "settle" with the plaintiff, and on the other he proposed to pay "her wages." There appears to be nothing unusual about these acknowledgments, and the only inferences of new promises which could legitimately be drawn from them would be promises to pay the amounts which had accrued up to the time they were made. The instructions of the court adequately presented the issue of new promises to the jury, and the foregoing exception is, therefore, overruled.

The questions raised by the defendant's remaining exceptions are not likely to arise in their present form at another trial, and, therefore, have not been considered.

*New trial.*

All concurred.