CORNELL v. GREEN.

(Circuit Court, N. D. Illinois. October 8, 1897.)

1. FORECLOSURE—PARTIES.

A foreclosure bill was brought against the mortgagors and their children and against "T., B., and C., all of whom are residents, * * * and guardians of said minor children, the said T. being also one of the executors of the last will of [the mortgagor] and others," "all of which persons and corporations before named are made defendants herein." The bill also averred conveyances from the mortgagor to said T., and that "the above-named parties against whom this bill is brought have or claim to have some interest in the premises * * * by mortgage, judgment, conveyance, or otherwise," and that each and all of the defendants have neglected to pay the debt. *Held*, that T. was made a party in his individual capacity, even though the prayer for process did not contain the names of all the parties, as required by the equity rules.

2. PROCESS—SERVICE.

The subpoena in a foreclosure suit was directed against the mortgagor, and "T., B., and C., guardian, etc., and T., executor, etc.," and recited, "We command you, and every one of you, to appear," and "the above-named defendants are notified that unless they, and each of them, shall enter their appearance," etc. The return recited personal service "upon T. as guardian and T. as executor." *Held*, that T. was sufficiently served in his individual capacity.

3. MASTER'S DEED—DESCRIPTION—MISTAKE.

A mortgage was foreclosed on the "south half," of a certain section. The master's deed recited that he sold the "south half," and then recited: "Now, therefore, this indenture witnesseth that the said [master] * * * does convey the north half." *Held*, that the word "north" is presumptively a mistake, that it may be rejected, and that without the substitution of any other word the deed is operative as a conveyance of the south half.

Robert Rae and F. B. Dyche, for complainant.
Geo. R. Peck and C. W. Ogden, for defendant.

SHOWALTER, Circuit Judge. On November 27, 1875, Mrs. Green exhibited in the circuit court of the United States for the Northern district of Illinois her bill of complaint for the foreclosure of two mortgages. Mrs. Sarah H. Gage, widow of the mortgagor, and a number of other persons and a number of corporations were made parties defendant. Certain of the defendants answered; others were defaulted. The cause was referred to a master, and a final

decree of foreclosure was entered on his report on July 31, 1876. Pursuant to this decree a sale was made by the master, and Mrs. Green became the purchaser of the mortgaged property on the 7th of December, 1876. She entered into possession pursuant to her purchase, and has since remained in possession. Afterwards, and on the 3d of February, 1877, she received the master's deed. The bill in the present case was filed July 29, 1896. Prior to the foreclosure above mentioned, and in December, 1874, George W. Gage, the original mortgagor, his wife, Mrs. Sarah H. Gage, joining him in the conveyance, had alienated the property, subject to the two mortgages, to one William F. Tucker. Tucker afterwards died, and long after the foreclosure the heirs of Tucker conveyed to this complainant, Cornell. The present bill is for redemption. The fundamental claim is that the interest of Tucker was not cut off by the foreclosure mentioned. It is said that on a proper construction of the bill of complaint in that case Tucker was not a party defendant; and, again, assuming him to have been a party defendant, that he did not appear, and was not served with process. The foreclosure bill reads in part as follows:

"Your oratrix, Hetty H. R. Green, who is a resident of Bellows Falls, in the state of Vermont, and a citizen in the said last-named state, brings this, her bill of complaint, against Sarah H. Gage, a resident of the city of Chicago, Illinois, a citizen of the state of Illinois, and the widow of the late George W. Gage, deceased, and executrix of his last will and testament; Eva Gage, Mary B. Gage, Carrie E. S. Gage, Alice Gage, George W. Gage, Jr., and David A. Gage, children of said George W. Gage, deceased, each of said children being now residents of said city of Chicago, and citizens of the state of Illinois, the said two last-named children, George W. Gage, Jr., and David A. Gage, being minors; William F. Tucker, Joseph K. Barry, and John W. Clapp, all of whom are residents of the county of Cook, state of Illinois, and citizens of said last-named state, and guardians of said minor children, the said William F. Tucker being also one of the executors of the said last will and testament of said George W. Gage, deceased; Louis L. Coburn, a resident of Chicago, and citizen of the state of Illinois [here follow the names of a large number of other persons and of a number of corporations],—all of which persons and corporations before named are made defendants herein."

In a subsequent portion of the bill the conveyance from Gage and wife of December 18, 1874, to said Tucker, of all the mortgaged premises for the consideration of $24,000, subject to the two mortgages, is averred. It is then set forth "that said above-named parties against whom this bill of complaint is brought have, or claim to have, some interest in said premises described in said trust deed by mortgage, judgment, conveyance, or otherwise"; and, afterwards, that Gage and his executors, "and each and all of them, and all of said defendants, have hitherto wholly failed and neglected, and still do neglect, to pay" the debt. The prayer for process is, "May it please your honors to grant to your oratrix a writ of summons issued out of and under the seal of this honorable court, according to the rules of practice of said court, directed to the said Sarah H. Gage and the other defendants hereinbefore named, commanding them, and each of them," etc.

It seems to me very clear that William F. Tucker is made a party defendant on the face of this bill. Complainant says she "brings

this, her bill of complainant, against * * * William F. Tucker, Joseph K. Barry, and John W. Clapp, all of whom are residents of the county of Cook, state of Illinois, and citizens of said last-named state, and guardians of said minor children, the said William F. Tucker being also one of the executors of the last will and testament of said George W. Gage, deceased, * * * all of which persons * * * are made defendants herein." If the question were whether or not Tucker, in his character as guardian of the minor children, was made a party, some criticism might be made on the phraseology of the bill, but it seems to me to be beyond controversy that Tucker himself is named and described as one of the persons against whom the bill is brought. The two minor children were themselves made parties to the foreclosure bill. Summons was issued against them and served on them; and a guardian ad litem, appointed by the court, appeared and answered in their behalf. It is predicated of William F. Tucker that he was a resident of the county of Cook, in the state of Illinois, that he was a citizen of the said state, and that he was one of the guardians of the two minor children. It is also said of him that he was one of the executors of the last will and testament of said George W. Gage. It is also stated in the bill that Tucker himself was the owner of the equity of redemption, to cut off which was the very purpose of the bill; and as one of the persons named in the list of those who were sued he is expressly made a defendant. There is no reason for saying that William F. Tucker merely in his character as guardian, or merely in his character as executor, was made a defendant, and that he was not personally a defendant.

The prayer for process in this bill does not contain the names of all the defendants mentioned in the introductory part of the bill, as required by equity rule 23, but for the purposes of the present controversy that rule can only be treated as a formality. The prayer for process indicates with as much distinctness against whom the subpœna is to issue as though the name of each particular defendant, as well as the name of Mrs. Sarah H. Gage, had been repeated in that part of the bill. I see no reason, on account of this formal defect, for impeaching the decree, or for holding that Tucker was not personally a party.

The subpœna in the case reads in part as follows: "The United States of America to Sarah H. Gage, widow of the late George W. Gage, deceased, and executor of his will; Eva Gage, Mary B. Gage, Carrie E. S. Gage, Alice Gage, George W. Gage, Jr., and David A. Gage, children of said George W. Gage, deceased; William F. Tucker, Joseph K. Barry, and John W. Clapp, guardian, etc., and William F. Tucker, executor, etc., Louis L. Coburn, executor, etc., David A. Gage," and so on, naming the other defendants and corporations,—"Greeting: We command you, and every of you, that you appear before the judges of our circuit court," etc. Then, after the signature of the clerk, comes the memorandum: "The above-named defendants are notified that unless they, and each of them, shall enter their appearance in the clerk's office of said court at Chicago, aforesaid, on or before the date to which the above writ

is returnable, the complainant's bill will be taken against them as confessed, and a decree entered accordingly. William H. Bradley, Clerk." The marshal states in his return indorsed on this writ: "I have served the annexed writ by personally delivering a true and correct copy thereof to each of the following named defendants on the day set opposite their names: Upon William F. Milligan, Monroe Heath, Bradford Hancock, * * * Julius White, and William F. Tucker as guardian and William F. Tucker as executor, on the 8th day of December, A. D. 1875," etc. It will be seen on the face of this subpœna that William F. Tucker is named therein as a defendant. The word "guardian" follows the name "John W. Clapp." On the face of the subpœna William F. Tucker is not mentioned as the guardian of any person, but he is named as an executor. It is stated in the return that the marshal served this writ by personally delivering a true and correct copy thereof to William F. Tucker on the 8th day of December, 1875. The recital by the marshal as to the character in which William F. Tucker was served is an immaterial matter. The copy of the writ placed in Tucker's hands gave him the information, namely, that he must come into the court, and make whatever defense he had to the bill. One copy was as efficacious for the purpose of informing Mr. Tucker that he had been sued as a dozen would have been. He saw on the face of the subpœna that he was expected to answer personally, and that he was expected to answer also as executor of George W. Gage. My conclusion is that Mr. Tucker was served with process; that the jurisdiction over him personally was complete. It would follow from this that the interest of Mr. Tucker in the land was cut off by the decree in the old foreclosure suit.

The master's deed given on the 3d of February, 1877, is set out in hæc verba in the bill, together with the proceedings in the foreclosure suit. Of the property sold by the master and bought by Mrs. Green one particular tract was the S. ½ of section 13, township 38 N., of range 13 E. of the third P. M., in the county of Cook, and state of Illinois. The master's deed, after mentioning the title of the cause, the names of all the defendants, the decree of sale, and the fact that he had advertised as required, goes on with the recital that at the day and place specified in the advertisement he sold the property, proceeding with the description of the same in detail, the tract in question being in that part of the deed correctly described as the south half of section 13, township 38 N., of range 13 E. of the third P. M. Thereupon, and following the statement that the entire property had been sold to Mrs. Green, the deed proceeds: "Now, therefore, this indenture witnesseth that the said Henry W. Bishop, master in chancery, as aforesaid, in consideration of the premises, and for the purpose of carrying into effect the said sale so made as aforesaid, and by virtue of said last-named decree, and in execution thereof, hereby does by these presents remise, release, and convey to the said Hetty H. R. Green the following described property, to wit." Here follows the description of the property again, but in describing the half section above referred to the word "north" is used instead of the word "south"; that is

to say, in this part of his deed the master describes that tract as the "north half of section 13, township 38 north, of range 13 east of the third principal meridian," so that on the face of the master's deed there is obviously a mistake. Presumptively, the word "north" in the granting part of the deed was the mistake. Presumptively—even if this bill did not expressly aver that the master conveyed to Mrs. Green the property sold, and even if the records set forth in the bill did not affirmatively show the fact—the word "south" should have been written where the word "north" appears. If the word "north" be rejected as a false description, the granting part of the deed would read, "Also the half of section 13," etc.; and by reference to the introductory part of the deed it sufficiently appears that the half mentioned in the granting part is the south half. The rule is laid down in some of the text-books that where the description in the granting part of a deed contradicts that in the introductory part of the deed, the words in the granting part prevail. But this rule should not hold against an obvious intent to the contrary, shown on the face of the deed. In the present instance the master commences the granting part of the deed with the words, "Now, therefore, this indenture witnesseth," etc., as before quoted, meaning to convey the property which, according to prior recitals, he had advertised and sold. Prima facie and presumptively the intent of the master was to specify in the granting part of the deed the property described in the introductory part as having been sold by him to Mrs. Green. But, as already intimated, the foreclosure decree and other proceedings recited in this bill show the word "north" in the granting part of this deed to be a false description. Without this word, there is enough in the granting part of this deed, when read in the light of what goes before, and in connection with the showing of the bill, to make the instrument operative under the statute of conveyances as a good and valid conveyance of the south half of section 13. It is unnecessary to discuss other features of the case. The demurrer is sustained.