## McVEETY v. HARVEY MERCANTILE COMPANY,
### Limited, et al.

(139 N. W. 586.)

**Vendor and purchaser — contract — performance — conveyance by third party.**

Plaintiff in writing contracted to sell and convey by his warranty deed, 1,200 acres of land to defendant corporation, as a purchaser. He sues to re-

Note.—The general rule that a vendor of land, in order to enforce any rights

cover damages for refusal and neglect of defendants to perform their part of the contract. The answer denies that plaintiff was ever able. to perform under his contract. On trial the proof disclosed that plaintiff never owned any of the land, nor had he any interest therein, but that he had contracted to personally sell the same, relying upon written permission from the owner that he might sell during a period which had expired, but had been verbally extended, to expire at the end of the time fixed in the written contract between plaintiff and defendants for its performance. The owner executed for delivery his deed of 960 acres, and assigned contracts for deeds for 160 acres, but inadvertently omitted to deed the remaining 80 acres of the 1,200-acre tract agreed by contract to be conveyed. The deed was sufficient to convey title to the land designated therein from the owner, Ross, grantor, to defendant company as grantee. This deed, with assignments of contracts to the 160 acres, was deposited at the place designated for deposit in the written contract between McVeety and defendants, and within the time limited for performance of said contract; this as a tender of performance by McVeety, who then notified defendants that he was able and ready to convey and fully perform his part of his contract upon payment by them of the purchase price, consisting of, in part, a bill of sale of a stock of goods, deeds of some town lots owned by Sayre, and a cash balance. Defendants refused to accept the deeds, convey, or pay the purchase price, on the ground that the deed deposited did not convey fee title to the omitted 80 acres and the 160 acres covered by contracts assigned, such refusal having been made on the last day of the fifteen-day period for the performance of the contract. Plaintiff asserts that defendants were in default in a condition precedent to the right to require a deed, in that an inventory of the stock of store goods, the inventory price of which was to constitute part of the purchase price of the lands, had not been theretofore made as provided in the contract; and that a sufficient proof of ability of McVeety to convey had been made, while defendants had been proven to have been in default; and that defendants cannot be heard to claim the right to a deed from McVeety, instead of from Ross, owner, in the performance of the contract, because defendants did not specifically object on that ground to the sufficient title offered them by the deed from the owner direct to the defendant company. Plaintiff seeks to recover the difference between what the landowner, Ross, would have been paid for the land, $38,000, and the $66,000 contract selling price to defendants, and on the trial recovered a verdict for $13,000. *Held:*

1. That to have performed his contract according to its terms, defendant must have been able to convey by his own warranty deed the land he has contracted to so convey, under the provisions of § 5401, Rev. Codes, 1905, pro-

under the contract of sale, must himself be in a situation to give such title as he has undertaken to give, is indisputably established, as shown by a note in 3 L.R.A.(N.S.) 103, with which the holding in the above case is in harmony.

viding that "an agreement to sell real property binds the seller to execute a conveyance in form sufficient to pass title to the property."

**Vendor and purchaser — offer of performance — conditions.**

2. That under § 5253, Rev. Codes, 1905, providing that "an offer of performance must be free from any conditions which the creditor is not bound on his part to perform," plaintiff has never offered a performance of his contract to convey, even granting the deed had been sufficient to convey title to the full tract of land covered by the contract; and as the tender of the deed of the third-party owner could not constitute a compliance with the contract calling for a deed of McVeety to defendants, proof of the offer of the third party to so convey all said tract is not sufficient to constitute proof of McVeety's ability to perform his contract with defendants.

**Vendor and purchaser — contract — covenants of warranty.**

3. The right to the covenants of warranty by deed from the seller is a valuable property right in the purchaser that must be given as required by the contract, unless expressly waived by the purchaser.

**Vendor and purchaser — refusal to perform — waiver.**

4. Defendants, by merely refusing to perform upon the tender of performance here offered by Ross, did not, by failing to demand the deed of McVeety, instead of the one tendered, waive the right contracted for, that McVeety should deed as grantor, to them as grantee, and that the title should come to the defendant company through McVeety.

**Vendor and purchaser — contract — ability to perform contract.**

5. Proof that a buyer of real estate would have received title from a third person to land covered by the contract is not proof of ability in the seller to perform his contract to convey by his warranty deed to his purchaser

**Vendor and purchaser — contract — breach — damages — ability of vendor to perform.**

6. Without proof of ability in a seller of real estate to convey to his purchaser in accordance with his contract with such purchaser, there can be no proof of detriment or injury occasioned the seller by a refusal of his purchaser to perform the contract. Proof of the seller's ability to perform lies at the base of any right of his to recover, and is a condition precedent to any right in him to recover. Without proof of such ability, no cause of action is established.

**Vendor and purchaser — breach of contract — action by vendor — default in condition precedent.**

7. With no cause of action established as in plaintiff, because no ability in him to perform the contract has been shown, proof that the defendants were in default in the performance of any act precedent to the delivery of the deeds and payment of the consideration therefor is immaterial, as it can neither

cure nor affect plaintiff's inability to perform the contract at any time during the life thereof.

**Judgment — judgment notwithstanding the verdict.**

8. The evidence precludes any right of plaintiff to recover, and the motion of defendants for judgment of dismissal of this action notwithstanding the verdict should have been granted.

Opinion filed January 2, 1913.

From a judgment for plaintiff, entered in the District Court for Wells County, *Coffey*, J., defendants appeal.

Reversed, and the action is ordered dismissed on the merits, with costs to defendants.

*John O. Hanchett*, for appellants.

If plaintiff can recover in this action, such recovery must be based upon the written contract pleaded. Johnson v. Kindred State Bank, 12 N. D. 336, 96 N. W. 588; 20 Am. Dig. Century ed. cols. 2464–2471, and cases cited. Rev. Codes, Sec. 5333; Hutchinson v. Cleary, 3 N. D. 270, 55 N. W. 729; National German-American Bank v. Lang, 2 N. D. 66, 49 N. W. 414; Schmitz v. Hawkeye Gold Min. Co. 8 S. D. 544, 67 N. W. 618; Northwestern Fuel Co. v. Bruns, 1 N. D. 137, 45 N. W. 699.

The contract is clear and certain, and language thereof alone must govern as to its interpretation. Rev. Codes, Sec. 5342.

Extrinsic evidence not admissible to explain. Tourtelot v. Whithed, 9 N. D. 467, 84 N. W. 8, 20 Am. Dig. Century ed. col. 2472, and cases cited; Grant v. King, 117 Minn. 54, 134 N. W. 291; Weitzel v. Leyson, 23 S. D. 367, 121 N. W. 868.

Where contract provides for the delivery of a warranty deed, it means deed of the person so contracting. Royal v. Dennison — Cal. —, 38 Pac. 39; Crabtree v. Levings, 53 Ill. 526; Steiner v. Zwickey, 41 Minn. 448, 43 N. W. 376; George v. Conhaim, 38 Minn. 338, 37 N. W. 791; Wietzel v. Leyson, 23 S. D. 367, 121 N. W. 868; Buswell v. O. W. Kerr Co. 112 Minn. 388, 128 N. W. 459, 21 Ann. Cas. 837.

The deed of a third party tendered under such a contract not sufficient. Royal v. Dennison — Cal. —, 38 Pac. 39.

One having an equitable estate merely, under an executory con-

tract, may offer premises for sale, without waiting to obtain deed. Townshend v. Goodfellow, 40 Minn. 312, 3 L.R.A. 739, 12 Am. St. Rep. 736, 41 N. W. 1056.

Plaintiff never at any time had title to the land, and, on his own showing, cannot recover damages. Gray v. Smith, 28 C. C. A. 168, 48 U. S. App. 581, 83 Fed. 825; Wells, F. & Co. v. Page, 48 Or. 74, 3 L.R.A.(N.S.) 103, 82 Pac. 856; Weitzel v. Leyson, 23 S. D. 367, 121 N. W. 868.

Under such a contract, good legal and equitable title to the lands, free from all defects, must be tendered. Turner v. McDonald, 76 Cal. 177, 9 Am. St. Rep. 189, 18 Pac. 262; McCroskey v. Ladd, — Cal. —, 28 Pac. 216.

Equitable title alone not sufficient. Ankeny v. Clark, 1 Wash. 549, 20 Pac. 583.

Witnesses cannot testify to conclusions or mere opinions as to title. Smith v. Northern P. R. Co. 3 N. D. 561, 58 N. W. 345.

To maintain action for breach of contract, plaintiff must perform, or offer to perform, in order to put defendant in default, unless defendant has positively refused to perform on his part. Arnett v. Smith, 11 N. D. 55, 88 N. W. 1037; Beiseker v. Amberson, 17 N. D. 215, 116 N. W. 94.

Time is of the essence of a contract only when so expressly stated therein. Rev. Codes, Sec. 5362.

A principal has notice of all facts known by his agent in the line of his duty, or within scope of his powers and employment. 40 Am. Dig. Century ed. col. 1521, and cases cited. Vawter v. Bacon, 89 Ind. 565; 40 Am. Dig. Century ed. col. 1527.

The measure of damages for breach of a contract to purchase lands is the excess of the contract price over the value of the lands, at the time of such breach. 48 Am. Dig. Century ed. col. 1357, and cases cited; Rev. Codes, Sec. 6569. Tinsley v. Dowell, 87 Tex. 23, 26 S. W. 946.

Value or damages must be fixed as of time of breach. Citizens Nat. Bank v. Osborne-McMillan Elevator Co. 21 N. D. 335, 131 N. W. 266.

Answer, by way of general denial, in action to recover damages for breach of contract to convey lands, puts in issue the amount of plain-

tiff's damages. German-American Bank v. White, 38 Minn. 471, 38 N. W. 361.

Under such general denial, proof of any fact tending to disprove plaintiff's damages or claim permissible. Bliss, Code Pl. 3d ed. Secs. 327–329; Plano Mfg. Co. v. Daley, 6 N. D. 334, 70 N. W. 277.

In such case, all facts, either expressly or impliedly averred, are put in issue by general denial. 31 Cyc. 195; Bellinger v. Craigue, 31 Barb. 534.

*Pollock & Pollock,* and *Turner & Murphy,* for respondent.

A party to an obligation can require performance thereof by another party, only when he has performed, or offered to perform, all conditions precedent, imposed upon him by the contract, and also be able and offer to perform all concurrent conditions imposed unless the other party has previously refused to perform, on his part. Grant v. Johnson, 5 N. Y. 247.

Where nonperformance is caused by defendant, plaintiff not bound to plead performance, or readiness to perform. Pleading the facts constituting his excuse in such case sufficient. Foster v. Leininger, 33 Ind. App. 669, 72 N. E. 164; Estill v. Jenkins, 4 Dana, 75; Schreiber v. Butler, 84 Ind. 576; Jennings v. Shertz, 45 Ind. App. 120, 88 N. E. 729; Hunt v. Crane, 33 Miss. 669, 69 Am. Dec. 381; Maguire v. Halsted, 18 App. Div. 228, 45 N. Y. Supp. 783; Gould v. Brown, 6 Ohio St. 538; Rice v. Sims, 2 Bail. L. 82; 11 Cent. Dig. Contracts, Sec. 1217.

It is only where plaintiff, by the contract, is required to do the first act, that he must plead offer to perform such act. 9 Cyc. 724, and cases cited.

Where performance excused by act or refusal of other party. Rev. Codes, Sec. 5268. 9 Cyc. 724–761; Gray v. Smith, 28 C. C. A. 168, 48 U. S. App. 581, 83 Fed. 824; Stanford v. McGill, 6 N. D. 536, 38 L.R.A. 760, 72 N. W. 938; DeLoach v. Smith, 83 Ga. 665, 10 S. E. 436; Armstrong v. Andrews, 109 Mich. 537, 67 N. W. 567; Ferree v. Wilson, 46 N. Y. S. R. 672, 19 N. Y. Supp. 209; Bond v. Carpenter, 15 R. I. 440, 8 Atl. 539; Tinney v. Ashley, 15 Pick. 546, 26 Am. Dec. 620.

Tender of deed of third person, to whom party making tender had conveyed the property which he agreed to exchange, will place other

party in default, if he refuses to accept such deed. Royal v. Dennison, 109 Cal. 558, 42 Pac. 39; Rev. Codes, Sec. 5260; McKinney v. Bode, 32 Minn. 228, 20 N. W. 94; White & S. Townsite Co. v. J. Neils Lumber Co. 100 Minn. 16, 110 N. W. 371; Wilder v. Haughey, 21 Minn. 101; Haaven v. Hoaas, 60 Minn. 313, 62 N. W. 110; Hastay v. Bonness, 84 Minn. 120, 86 N. W. 896; Gilbert v. McDonald, 94 Minn. 289, 110 Am. St. Rep. 368, 102 N. W. 712; Nicholson v. Congdon, 95 Minn. 188, 103 N. W. 1034.

Demand is unnecessary where it is shown that such demand would have been futile. "The law neither does nor requires useless acts." Rev. Codes, Sec. 6679; Beiseker v. Amberson, 17 N. D. 215; 116 N. W. 94; Greenwood v. Hoyt, 41 Minn. 381, 43 N. W. 8; Rev. Codes, Secs. 5255–5269, 5219; Eames v. Haver, 111 Cal. 401, 43 Pac. 1120.

If performance of an obligation is prevented by the creditor, the debtor is entitled to all the benefits which he would have obtained, if performed by both parties. Masterton v. Brooklyn, 7 Hill, 61, 42 Am. Dec. 38; Bush v. Baltimore & C. Constr. Co. 88 Md. 674, 41 Atl. 1092; Griffin v. Colver, 16 N. Y. 489, 69 Am. Dec. 718; Gardner v. Armstrong, 31 Mo. 535; Morrison v. Wright, 7 Port. (Ala.) 67; McBrayer v. Cohen, 92 Ky. 479, 18 S. W. 123; Philadelphia, W. & B. R. Co. v. Howard, 13 How. 307, 14 L. ed. 157.

The question of insufficiency of the evidence is limited to points and grounds brought to the attention of the trial court. Schmidt v. Beiseker, 19 N. D. 35, 120 N. W. 1096.

Assignments of error not discussed in brief, nor presented in argument, will be deemed abandoned. Foster County Implement Co. v. Smith, 17 N. D. 178, 115 N. W. 663; Kelly v. Pierce, 16 N. D. 234, 12 L.R.A.(N.S.) 180, 112 N. W. 995; Pendroy v. Great Northern R. Co. 17 N. D. 433, 117 N. W. 531.

Goss, J. This action was brought to recover damages for alleged default of the defendant in fulfilment of a certain contract to purchase lands. A verdict of $13,000 was obtained against defendants, who appeal. The contract reads:

"This agreement made and entered into in triplicate this 27th day of May, 1910, by and between J. H. McVeety, party of the first part, and the Harvey Mercantile Company, a corporation, and A. J. Sayre,

acting by and through L. P. Strong, attorney in fact, party of the second part,

"Witnesseth: That the said parties have agreed and do hereby agree to make a sale and exchange of property as follows, *viz.:* The said party of the first part agrees to sell and convey to the Harvey Mercantile Company, one of the said parties of the second part, *by good and sufficient warranty deed free from all encumbrances,* 1,200 acres of land in the county of Clay, in the state of Minnesota, at the price of $55 per acre, amounting to $66,000, to be paid for by the parties of the second part in the manner hereinafter specified; which said land is more particularly described as follows: [with description] known as the D. C. Ross land."

"The parties of the second part agree to take and purchase the above-described land from the party of the first part at the price above mentioned, and to pay therefor as follows, *viz.:* The said A. J. Sayre, one of the said parties of the second part, agrees to sell and convey to said first party, by good and sufficient warranty deed, free from all encumbrance, the store building and lots in the city of Harvey, North Dakota, now occupied by the said Harvey Mercantile Company, at the agreed price of $18,000, which said first party agrees to take at said price as a payment upon the sale of said land; which said lots and store building are more particularly described as follows: [with description given] and the store building thereon."

"As a further payment to the said first party for said land the said Harvey Mercantile Company, one of the parties of the second part, agrees to sell and transfer to said first party, free from all encumbrance, its stock of goods and merchandise now situated in the said store building on the lots above described:" (with the particular description of the stock transferred and providing for an inventory by parties named to determine the value of said goods.

"And the said Harvey Mercantile Company, party of the second part, agrees to sell and transfer to the said party of the first part, free from all encumbrances, and the said party of the first part agrees to take *as a payment on the sale of said land* all of the fixtures in said store, except the fixtures in the hardware department, the same to be inventoried and taken at the inventory price."

"That the balance of the purchase price of said land shall be paid

to said party of the first part in cash by the said Harvey Mercantile Company, party of the second part, *after the said inventory of stock and fixtures has been made and completed, and at the time the deeds are delivered and transfer made."*

"It is agreed that said inventory is to be made, abstracts of title procured, deeds, and bills of sale prepared and executed in accordance with the terms of this contract, *and the deal closed within fifteen days from this date;* said deal to be closed, and deeds, abstracts, and bill of sale delivered at the Bank of Harvey in the city of Harvey, Wells county, North Dakota. In case the said lands shall have loans or encumbrances thereon which the parties of the second part desire to assume, *they may do so and the amounts owing thereon deducted from the purchase price of such land."*

The complaint exhibiting the foregoing contract as a part thereof pleads the entering into this agreement in writing, alleging that "the plaintiff entered into an agreement in writing with the defendants, under and by the terms of which the plaintiff, as party of the first part, and the said defendants, as parties of the second part, contracted and agreed to make a sale and exchange" of the property mentioned in the contract. "That the said plaintiff agreed to sell and convey to said defendant Harvey Mercantile Company, *by good and sufficient warranty deed, free from all encumbrance, 1,200 acres of land,"* and corresponding to the description thereof in the contract. "That the defendants agreed to take and purchase the above-described land from the plaintiff at the price mentioned, and to pay therefor as follows, to wit: The said defendant Sayre agreed to sell and convey to plaintiff by good and sufficient warranty deed, free from all encumbrances, the store building and lots in the city of Harvey at the agreed price of $18,000, which plaintiff agreed to take at said price as a payment upon the sale of said land."

"As a further payment to the plaintiff for said land the said Mercantile Company agreed to sell and transfer to the plaintiff, free of all encumbrance, its stock of goods and merchandise then situated in the store building on the lots above described." Then follows a recitation of the averments of the contract concerning the inventory and the ascertainment of the price of the stock of goods to be so taken in exchange and as a part payment upon said land. "It was further stipu-

lated and provided in said written agreement that the balance of the purchase price of said lands should be paid to the defendant in cash by said defendant Harvey Mercantile Company, after the said inventory of stock and fixtures had been made and .completed, and at the time the deeds were delivered and transfer made." "It was further, in said written contract and agreement, specified and agreed that said inventory should be made, abstracts of title procured, deeds and bills of sale prepared and executed, in accordance with the terms of said written contract and agreement, and the deal closed within fifteen days from said 27th day of May, 1910; and that said deal be closed and deeds, abstracts and bill of sale delivered at the Bank of Harvey, in the city of Harvey, North Dakota; and it was further therein agreed and specified that in case the said lands should have loans or encumbrances thereon, which the defendants desired to assume, they might do so, and the amounts owing thereon deducted from the pur- chase price of said lands." "That the plaintiff was at all times *after the taking of said contract, and until the expiration of said fifteen-day period therein specified, able, ready, and willing to perform all the conditions of said contract* as above set forth on his part to be done and performed, and on the 6th, 7th, 8th, 9th, 10th, and 11th days of June, 1910, offered so to do, and that at each and every such time he requested and demanded of the defendants that they perform the conditions and provisions of said contract and agreement on their part to be performed." "That the defendants wholly failed, neglected, and refused to perform the conditions of said contract and agreement as hereinbefore alleged upon their part to be done and performed, and wholly failed, neglected, and refused so to do, and wholly failed, neglected, and refused to convey the said real estate agreed by them to be conveyed, and wholly failed, neglected, and refused to transfer and deliver to the plaintiff the personal property or any part thereof, and wholly failed, neglected, and refused to inventory the same or any part thereof, and wholly failed, neglected, and refused to pay over to the plaintiff the said money or any part thereof, to the damage of the plaintiff in the sum of $35,000." Then follows a demand for judgment for $35,000. We have italicized parts of the contract and complaint to be noticed hereafter. The complaint is thus set out in detail to show that the same follows the contract, and is based upon an

alleged breach of a contract of purchase and sale of real property between the parties to this action, McVeety, plaintiff, and the Mercantile Company, and Sayre, as defendants. In no sense can the contract be said to be for commissions, or a real estate brokerage contract, but instead is a contract of sale, whereby McVeety agreed to convey, by his deed of warranty, good and sufficient title to the particular 1,200 acres of land, described, to the Mercantile Company as grantee, upon the payment by the said grantee to such seller and grantor at the bank designated, the equivalent of $66,000, to be paid by deed of the business property from Sayre to McVeety, and a bill of sale by the Mercantile Company of the stock of goods from it to McVeety, and a payment of a cash balance. The fifteen days within which the "deal was to be closed" dated from May 27th, expiring Saturday night, June 11, 1910.

The separate answers of the two defendants deny the legality of the alleged contract, on grounds stated; and, "further answering said complaint, defendant alleges that the said McVeety was never at any time prior to the commencement of this action *able to comply with the terms and conditions of said contract on his part,* and never at any time prior to the commencement of this action *offered to comply with the same,* and has never at any time *tendered or offered to deliver to the defendants warranty deeds to the several tracts of land, free from encumbrances as specified in said contract;"* together with a general denial of the allegations of the complaint. The issue presented is one of the readiness and ability of the plaintiff to perform, coupled with the further question, if necessary to consider the same, of whether, granting that readiness and ability to perform are established, defendants defaulted in or breached the contract while the plaintiff was so ready, able, and willing to, and endeavoring to, perform its terms, conceding that its nonfulfilment would occasion plaintiff detriment for which he may recover damages. A question of the measure of damages is also raised for disposal, provided a cause of action for damages exists to plaintiff.

As bearing upon the performance of the contract and the ability of the plaintiff and alleged defaults of the defendants in their performance, it is necessary at this time to give a synopsis of the testimony pertinent thereto; and, as this case was tried to a jury and a recovery

had, we must take every reasonable intendment as against the defendants, and, on all disputed questions of fact, adopt the testimony on the plaintiff's side of the case as controlling on the facts.

The officers and principal shareholders of the Harvey Mercantile Company, with the exception of its manager, Mr. Phillips, were then residents of the Canadian Northwest. The mercantile business was to be continued pending the transfer. Previous to the entering into the contract, the defendants had knowledge that the Minnesota land to be transferred was owned by Ross, and not by McVeety. Defendants undertsood McVeety had some deal on for the purchase of the land he was selling, and assumed he could comply with the terms of the contract, and evidently all parties to the contract entered into it with good faith and with intent to comply with its provisions. In fact, McVeety did not own any part of the tract he contracted to sell, and has never at any time had title thereto or any interest therein. His authority to sell is contained solely in the following letters from the owner of the land, coupled with an oral extension thereafter. The letters are:

Minneapolis, Minn., March 8, 1910.

J. H. McVeety,
    Harvey, N. D.
Dear Sir:—

Your letter of the 2d was received by me to-day, relating to my lands in Clay county. I have not made any deal regarding the sale of the same yet, and would be pleased to know whether this party who you refer to could handle it. [Then comes a description of the land by tracts.] As you stated in your letter, I think I did mention a $40 price to you, but if it would be sold on a cash basis there would be $5 an acre commission in it for you. "Write me at the Vendome Hotel as to whether you can handle it, or if you wish me to meet you at any place you can state where." "I will say at present that I will not list these lands with anyone, but if you have a proposition to offer I will consider it upon my return from the above places. If, however, there is anything pressing, you can wire me at Chicago, in care of Kaiserhof Hotel.

Yours truly,
D. C. Ross.

No answer to this letter is in evidence if any was made. Subsequently the following letter was received by plaintiff:

Fargo, North Dakota, May 11, 1911.

J. H. McVeety,
      Harvey, N. D.
Dear Sir:—

I will give you until May 21, 1910, to close up the sale of all my land in Clay county, Minnesota, under the terms of my letter of March 8, 1910, said terms being $35 per acre net cash to me.
                                                       (Signed)        D. C. Ross.

By an oral understanding subsequently had between Ross and plaintiff, the privilege to sell mentioned in these letters was extended up to and including June 11, 1910, under the same terms. The next step in proceedings is the contract for purchase and sale, of date of May 27, 1910, providing for the closing of the deal within fifteen days from that date, or on or before June 11th following. On May 28th, Ross executed his warranty deed, duly acknowledged, in proper form, running to the Harvey Mercantile Company as grantee, describing and conveying 960 acres of said 1,200 acre tract, of which total tract the description of 80 acres was inadvertently omitted. Another 160 acres of the tract was held by Ross on state land certificates issued by the state of Minnesota and assigned to him, upon which there was a balance due to the state of $900, and for which land no patent or deed had been issued by the state, as the contracts had not been paid up. These four contracts for a total of 160 acres of the land described in the contract of sale were assigned by Ross to the Harvey Mercantile Company, and forwarded May 2, with the deed covering the 960 acre tract, to the First National Bank of Harvey, with a letter of instructions of said date, the material parts of which letter read: "We send you herewith the following papers: Warranty deed from Donald C. Ross to the Harvey Mercantile Company for the following described real estate in Clay county, Minnesota: [Describing 960 acres of it] also Minnesota commissioners certificates internal improvement lands covering the northeast quarter of 22–138–48, Clay county, Minnesota,

24 N. D.—17.

said certificates being assigned by D. C. Ross to the Harvey Mercantile Company."

"These papers are to be presented by you for us at the bank of Harvey, and delivered to said bank for the said Harvey Mercantile Company, or directly to the officers of the said bank, at said bank, upon the payment to you for remittance to us of $38,061.10."

"Kindly present these papers at the bank upon receipt, but retain possession of the same until payment of the above amount is made to you for remittance to us. You are authorized to retain these papers for the purpose above indicated, until the close of business on the 11th instant, *after which, if the same are not taken up prior to that time, they are to be returned to us."*

"These papers affect a land deal of considerable importance, in which James H. McVeety of your city is interested, and no doubt he will see you about it. We anticipate that after you present these papers at the bank, and they know that you have them subject to delivery at any time within the period above mentioned, they will inform you whenever they are ready to close the deal and pay the money. You can, of course, make your arrangements with said bank as to the details."

"These papers are sent to you for the accommodation of Mr. McVeety, and your compensation, including exchange, should be paid by him, and he will pay the same upon request from you so to do. Kindly acknowledge receipt." Signed by S. S. Lyons, as cashier.

On the following Monday, June 6th, these papers were presented by the First National Bank to the Bank of Harvey, mentioned in the contract, where they remained a week until sometime during the day of June 14th, when they were returned pursuant to instructions under which they were sent to Harvey. With the deed and assignments were abstracts of title to the various tracts which were taken from the bank by Phillips, the representative of the defendant company, for inspection, and were by him forwarded to his attorney at Fessenden for his examination and advice as to the record title of the land, and were returned with letters of criticism on the titles of various tracts under date of June 10th; and the next day, Saturday, June 11th, Phillips returned the abstracts and notified the cashier of the Bank of Harvey that he refused to accept the papers, as they were unsatisfac-

tory or insufficient, according to the testimony of such cashier; and, according to the testimony of Mr. Phillips, he notified said cashier that "the deeds were insufficient and the land encumbered with mortgages and taxes, and we couldn't accept them as they were." And at that time an examination of the deed was made by Mr. Phillips, who appeared at the bank again the following Monday morning. Concerning what transpired, Mr. Phillips testified: "He still had the papers there at that time. I asked him if he still had the deed, and he said he had, and I asked him if I could take it a moment, and he said, 'Yes'; and I did take the deed, and he was there with the president of the bank. I had the contract there. I called their attention to the fact that 80 acres was omitted on the deed and the deed called for encumbrances, and I showed them the terms of the contract and told them this description isn't in the deed at all, and called their attention to the encumbrances, and they noticed that and also went on to say that the land was encumbered with a ditch lien and taxes. I had learned that from the opinions on the abstract. As to what I said about the condition of the title to the northeast quarter of section 22, I called their attention that there were four certificates, 40 acres each, called internal improvement certificates. and so marked it on the contract at the time and took a memorandum of it. That is I called their attention to the fact that there were those certificates, instead of the deed. That was while Mr. Blanch (cashier of the Bank of Harvey) still had those papers there. If those papers, deeds, and transfers had been in accordance with the contract, and no defects of title, I was at that time ready, willing, and able to go through with this contract. It would simply have involved a delay in getting started, simply been ready to start, but it brought things down to a point where we would have been ready to start the inventory. I was still anxious to go through with the deal."

Phillips also testifies to having called McVeety up by 'phone Saturday afternoon, June 11th, and told him over the 'phone: "We have rejected your tender, because your deeds are insufficient and the lands are encumbered with mortgages and taxes. I know his voice and I could not be mistaken." This telephone conversation is denied entirely by McVeety, and, under the findings of the jury, it must be taken as never occurring. Concerning the matters transpiring Monday

morning in the Bank of Harvey Blanch, testifies: "I had some conversation with him after that (Saturday) I think on the following Monday, which would be the 13th in the morning. At that time he said the papers were incomplete, and the land was encumbered with mortgages and taxes, and also called my attention to the fact of an omission of 80 acres in the description of the deed. He did not mention any of those things to me prior to the 13th of June to the best of my recollection." "When he was there on Monday morning he pointed out some defects in the papers. At that time he called my attention to the fact that there was 80 acres omitted from the deed. At that time he had the contract there. Compared it so I could see that there was 80 acres omitted. My attention was called to the fact at that time that 80 acres was omitted from the deed. Phillips also called my attention to the fact that there was no deed to one tract, but only those state land certificates,—they were there,—and he called my attention to that fact. He also called my attention to the fact that the lands were covered by mortgages and encumbrances. To the best of my recollection he did not call my attention to the matter of a ditch lien on one quarter. This afternoon is the first time I heard about that." "When I returned the deeds on Monday I think I returned them to the assistant cashier of the First National Bank. When they were returned I informed him that the tender was rejected, but I don't know whether I told him any specific reason or not. If he asked me I would have told him all about it, all I knew."

McVeety testifies concerning this particular matter: "I never did pay up these mortgages (on these lands aggregating some $4,400). I never procured or tendered satisfactions of these mortgages, and I did not have them there at the bank so they could be closed out as the same transaction, not except they accepted them subject to these liens. It would have taken a few days to clear them off. The abstract showed unpaid taxes on this land. I did nothing about having those paid off. As to whether one 80-acre tract was omitted entirely from the deed, I did not know that it was. That is what I have been told. If it was, that was not intentional. There was never any other or further tender or offer to comply with this contract after this 11th day of June. The instructions were to return the papers, and they were returned on the following Monday."

Ross testifies that on June 23d, following the return of the papers, he transferred a half section of the 1,200 acres. "I never conveyed, by warranty deed or otherwise, the legal title to these lands or any of them to the plaintiff McVeety. The time within which *he was given the right to sell the lands in question under these exhibits has now expired.*" "As to my extending the time in which plaintiff might complete the sale of these lands *orally* or in writing, to the best of my knowledge, I gave him an extension orally for a short time. As to the time of the extension which I gave him beyond the time expressed in Exhibits 1 and 2 [the letters above set forth], McVeety showed me a contract which he claimed to have made with the defendants for the exchange of these lands, and I read it over, and the time that I gave him to complete these, as near as I can remember, was the expiration of the contract he had in his hand at that time." That extension was an oral extension. The letter of instruction written by Cashier Lyon accompanying his deed to the First National Bank of Harvey was sent under his (Ross's) instructions. "I have since discovered that there was an omission of one description of a piece of land in the letter sent by Lyon just referred to. I have discovered that it seems to be short 80 acres. As to whether or not that 80 acres was described in the deed which I executed and forwarded I am in doubt, after seeing Lyon's letter, but what we omitted to put that in." He testifies, after examining the deed, that 80 acres was omitted from it, omitted by mistake. Ross testifies over objection that he had been ready, able, and willing, at the request of McVeety, to convey, by his warranty deed to defendants, all of the said lands, consisting of 1,200 acres as described, excepting the 160 acres covered by said certificates, which he had assigned to defendants. The consideration paid him for the transfer of the half section thereafter in June of that year was $16,000 for that half section. The deed to defendant company was a conveyance subject to mortgages aggregating over $4,400.

Plaintiff testified that he had made arrangements to procure of the First National Bank of Harvey some twenty-two to thirty thousand dollars to pay off any encumbrances on the land that defendant should require to be paid should they elect to take the land free of encumbrances, and also to apply toward paying off Ross should the amount of cash to be paid by the Mercantile Company, over and above the $18,-

000 allowed for the building and the additional amount at which the stock would inventory, not be sufficient to pay up all that would be due in cash to Ross.

It is further undisputed that on every day during the week ·from June 6th to June 11th, inclusive, McVeety appeared at the store of the Mercantile Company and demanded of Phillips, in charge, that they proceed to take the inventory under the contract as a partial performance of it, and during this time had his appraiser, mentioned in the contract, ready to proceed with the inventory. That Phillips had their appraiser in readiness to take the inventory and had caused the stock to be looked over preparatory to the inventory being taken, but had delayed starting the inventory until after the inspection of the abstracts of title and deeds to the Minnesota land, and until Sayre could forward from Canada his deed to the lots upon which the building stood, which deed was in Phillips' hands on or before June 11th, the deed of Sayre running to the Harvey Mercantile Company as grantee apparently that it might reconvey by warranty deed to McVeety in closing the deal. During the week of June 6th to 11th, McVeety notified Phillips that if the deal was not closed according to contract a damage suit against the defendants would be the result, Phillips stating that "McVeety commenced to intimate that he did not care much whether the deal went through or not. That he really preferred a damage suit." And telegrams are in evidence communicating news of such contemplated suit in case of default to the officers and principal stockholders of the company, then in Canada. There is also evidence tending to show that, soon after the execution of the contract of purchase and sale, the general conditions of the country changed because of drouth and climatic conditions, giving· rise to possible inference from the testimony that both parties to the contract might, because thereof, be more or less reluctant to carry out its terms, and a reason why plaintiff should prefer a damage suit to a performance of the contract. This, however, is strenuously denied by all parties, who claim to have been acting in good faith throughout. In any event, no delay occurred in the commencement of suit, the complaint being verified June 21, 1910.

The plaintiff for his cause of action pleads that at all times from May 27th to and including June 11th, the fifteen-day period mentioned

therein, he was ready, able, and willing to fully perform all his part of the contract to convey this entire tract by good and sufficient warranty deed to the defendants. This is, by answer, denied and the first matter for consideration. Regardless of any defaults of the defendants, before plaintiff can recover, as the basis of damage he must show, as he has plead, an ability to have fully performed on his part the contract according to its terms; and here we notice he has never possessed title to the whole or any part of the land he has agreed to convey by his own sufficient deed of warranty. Nor has he had one dollar invested in said land. Nor has he had a contract of purchase with the owner. On the strength of a mere offer by the owner to sell, and not upon a contract of sale or any interest in the land as against the owner, plaintiff has made his contract to sell and convey by his own warranty deed thereof. He is an entire stranger to the title of this land. While some of the earlier cases hold that a person in such a position cannot enter into a lawful contract of sale, the later cases and the weight of authority is to the contrary. One may contract to deliver title even though he does not have it, so long as he is not a mere volunteer and is acting in good faith in so contracting. 39 Cyc. 1213. Though holding no contract of sale or instrument whereby plaintiff could enforce a conveyance from the owner, yet he acted under permission of the owner, and must not be regarded as a mere volunteer, but as one authorized and capable of entering into a valid contract. But does the proof establish the necessary averment of the complaint that plaintiff, during the lifetime of this contract, has been able to convey by his own warranty deed as he has contracted to do? Manifestly it does not. The proof of his ability to perform requires proof of title in him or proof of some contract enforceable at law whereby he may, within the time limited in the contract, or a reasonable time thereafter, time not being of the essence of this contract, require the owner to clothe him with the title that he may convey the same. "If the vendor does not acquire such an interest in the estate as is susceptible of conveyance at the time provided for by the contract, there is, of course, a breach of the contract." 39 Cyc. 1213. Instead of possessing these essentials to this suit for damage as proof of his ability to perform, he has established at the most but a willingness on the part of the owner to convey to the plaintiffs, not in performance of his contract of sale,

but, instead, the substitution of a new agreement of purchase and sale of realty between third parties, neither of whom is under obligation in law to perform. If we should hold that defendants must accept this deed as compliance with plaintiff's contract, we would be in fact making and enforcing a new substituted contract, and also overriding a statute (§ 5253, Rev. Codes, 1905) which provides that plaintiff has no right to compel defendants to accept any condition more or different than what defendant has bound himself by his contract to plaintiff to perform. The statute reads: "An offer of performance must be free from any condition which the creditor is not bound on his part to perform." Under this statute this offer to perform from a third party cannot be plaintiff's offer, as the importing of a third party into the contract, if it were possible, would import conditions therein concerning which the defendant has not contracted. And again the contract upon which the damage is based, and upon which the proof of ability to perform has been offered and is being considered, is that plaintiff shall transfer title to this tract by his own deed of warranty, thereby calling for the transfer by his own instead of the deed of a third party, and is to the effect that plaintiff, and not a third party, alone shall covenant and warrant the title. The right to exact of plaintiff his warranty deed containing covenants of title is a property right, contracted to be given by plaintiff as a part of the consideration for and as a part of the performance of the contract. The covenant of warranty is valuable; and the right thereto from a particular person, in this instance the plaintiff, must be presumed to be of value; and when we find the same within the express terms of the contract, attempted compliance without plaintiff's covenants should not be held to be a substantial compliance with the contract. If there be any question concerning plaintiff's obligation to convey by his own deed, as distinguished from a third party's, to substantially comply with the contract that he personally shall so transfer, § 5401, Rev. Codes, 1905, puts that question beyond dispute. It reads: "An agreement to sell real property binds the seller to execute a conveyance in form sufficient to pass the title to the property." And such is but the rule in the interpretation of such contracts independently of statute. 39 Cyc. 1554, 1555, and numerous cases cited. Then, again, the time and manner of performance being specified in the contract, the same is

controlling in such respects. 39 Cyc. 1553. The only reasonable conclusion to be drawn from the terms of this contract is that the closing of the deal was to be made by the delivery by plaintiff of his good and sufficient deed of warranty, conveying title to this 1,200 acres to the Mercantile Company, defendant, and the delivery by said defendant to McVeety of the bill of sale of its stock of merchandise, and the delivery by Sayre of his warranty deed conveying title to the Mercantile Block to McVeety, and the payment by the Mercantile Company of the difference between the $18,000, purchase price of the store building and lots, together with the inventoried price of the goods and the contract price for the 1,200 acres of land, $66,000, the exact amount of such difference not being in evidence except that it is estimated at about $30,000. But summarized, the closing of the deal involved the delivery of the deed to these 1,200 acres and payment therefor by the defendants; the delivery and the payment being concurrent conditions and exacting concurrent action by the parties, and to the effect that neither parted with title or money in advance of the reception from the other of the title or money or goods to be received as the consideration for the deal. The contract, as we have said, calling for the conveyance by McVeety, makes an essential to its performance an ability at some time during the period of performance of the contract of plaintiff to perform the same by a transfer by him, investing defendants with the title he has contracted to convey to them. Under the contract this ability to pass title contracted for involved the necessary ability to procure the same by McVeety in advance of the payment by defendants for the land and independent of the means or money of the defendants, and this is the ability that McVeety must establish as existent in himself before he can predicate damages upon any default of defendants in performing their contract. And in this connection the evidence shows conclusively an intent in McVeety not to procure title in himself to the land, but instead to substitute the title of the owner, and deliver the same to the defendants in an attempted performance of his own contract, calling for his own conveyance. Granting that he intended to procure title to himself and then convey the same, which assumption would be contrary to the evidence, he would then be, on his own showing, in a position whereby to procure such title in himself he would necessarily have to first obtain the use of the de-

fendants' money and pay Ross therewith from the money or property of the defendants, and thereafter transfer the title thus procured to the defendants in performance of his contract. This would make the payment of the money by defendants necessarily a condition precedent to their right to exact McVeety's deed, instead of their right under the contract that the delivery of money should be concurrent and instantaneous with their receipt of the deed conveying title to them of what they have purchased by such payment. Hence, to hold that plaintiff possessed the ability to transfer contemplated in law and necessary upon which to predicate an action for damages, we would be obliged to ignore the terms of the contract making the payment and receipt of title concurrent conditions, and, on the contrary, hold that its terms as to performance contemplated that defendants should part with the money in advance of a delivery to them of the title, the consideration for the payment, with the necessary result of requiring them to run the risk of McVeety's ability to procure title in him, and to do which an expenditure of defendant's money would necessarily be involved and the corresponding attendant risk suffered by defendants for a period long or short according to the controlling circumstances in procuring title to that for which they must have already parted with a contract consideration of $66,000. This logical and unfailing result of respondent's contention on the present ability of plaintiff to perform the contract is repugnant to all principles, equitable or legal; and, so far as we can find, is utterly without support in the authorities. If plaintiff can be said to have made proof of his ability in such respects to perform the contract, then clearly no financial ability is necessary other than to procure the use, without legal right, of a purchaser's money with which to purchase title that it may in the future be conveyed, and all of which is without the contemplation, or contrary to the express terms of, the contract to sell. As authority for our conclusions we cite Gray v. Smith, 76 Fed. 525, appealed and affirmed in the circuit court of appeals for the northern district of California, 28 C. C. A. 168, 48 U. S. App. 581, 83 Fed. 824; and also Royal v. Dennison, — Cal. —, 38 Pac. 39, before that court again in 109 Cal. 558, 42 Pac. 39. The former case, Gray v. Smith, concerns an interpretation of California Civil Code provisions identical with our own, and is so parallel in facts and conditions as to be almost interchangeable with those in the case on trial. Briefly, the

facts involved an exchange of 8,421 acres of land at an agreed price of $120,000, which, together with $125,000 cash, constituted the agreed purchase price to be paid for a block in San Francisco. The plaintiff, Gray, occupied the identical position of McVeety in this suit, having obtained a written offer from Donohoe, the owner of the city property, that he would deed to one Mills, since deceased, represented by Smith, executor of the Mills estate. Title deeds from the owner, transferring good and sufficient title to Mills as grantee, were tendered by the plaintiff, who, supposing the title to be defective when it was not, refused to accept it or pay the contract price therefor, which had been, as between Gray and the owner Donohoe, fixed at $165,000. It is conceded that the supposed defective title was good, and that, had Mills performed, he would have received all he had contracted to obtain from plaintiff. The case is unquestionably on all fours with the broadest state of facts in plaintiff's favor for which he can contend under the testimony. The following is the reasoning of the court: "The land which the plaintiff was to convey did not belong to him, and he had not then nor did he afterwards acquire any estate or interest therein. He had received a written offer from the owner of the property to sell it for $165,000 cash and one half the taxes of the current year. The offer was never accepted. It was without consideration. It was a bare offer to sell, and could have been rescinded at any time. . . . It left the property in the same relation to the contract in which it would have stood had there been no such instrument. When Mills withdrew from the contract he had discovered that the title to the land he was to purchase was not in the plaintiff, but was in Donohoe. It is true that he did not place his refusal to perform upon that ground, but on the ground that the title in Donohoe was found to be defective; but that fact is immaterial so far as this case is concerned. The case presented for our consideration, therefore, is one in which the plaintiff made a contract to sell real estate of which he was not the owner, and in which he had no right, title or interest, nor the ability to compel, by the law or otherwise, a conveyance from the owner.

"It is contended by the plaintiff in error that the refusal of Mills to be bound by his contract, before the time for its completion had arrived, excuses the plaintiff from showing or proving that he had the ability to perform the contract upon his part. It is true that where the vendor

of property, before the arrival of the time for the completion of his contract of sale or conveyance, disables himself from performing by disposing of the property to another, the purchaser may at once bring his action, and he need not aver or prove tender of the purchase money upon his part nor his ability to carry out the contract; and where either party to a contract gives notice to the other that he will not comply with its terms, the other is excused from averring or proving a tender of performance. But in any case of action upon a contract the elements of the plaintiff's damage must be certain and the facts must exist from which it may be deduced that he has suffered loss. One who makes a contract to sell property of which he has no title, nor the certain means of procuring title, presents no facts upon which damages to him may be predicated if the purchaser withdraws from the contract. The pleadings and the finding in this case leave it uncertain whether the plaintiff could ever have acquired title to the Market street lot. So far as the performance of his contract was concerned, he was in no better attitude than one who has disabled himself from carrying out a contract of sale by selling the property to another,"—citing Bigler v. Morgan, 77 N. Y. 312; Heron v. Hoffner, 3 Rawle, 393, 400; Bank of Columbia v. Hagner, 1 Pet. 464, 7 L. ed. 222; Traver v. Halsted, 23 Wend. 66; Eddy v. Davis, 116 N. Y. 247, 22 N. E. 362, 363; Townshend v. Goodfellow, 40 Minn. 312, 3 L.R.A. 739, 12 Am. St. Rep. 736, 41 N. W. 1056; Burks v. Davies, 85 Cal. 110, 20 Am. St. Rep. 213, 24 Pac. 613; Carpenter v. Holcomb, 105 Mass. 285; Lawrence v. Miller, 86 N. Y. 131; Nelson v. Plimpton Fireproof Elevating Co. 55 N. Y. 480; North v. Pepper, 21 Wend. 636. To which we may add Wells, F. & Co. v. Page, 48 Or. 74, 3 L.R.A.(N.S.) 103, 82 Pac. 856; Sievers v. Brown, 34 Or. 454, 45 L.R.A. 642, 56 Pac. 171; Hampton v. Speckenagle, 9 Serg. & R. 212, 11 Am. Dec. 704; Mix v. Beach, 46 Ill. 311; Wallace v. McLaughlin, 57 Ill. 53; Peck v. Brighton Co. 69 Ill. 200; Birge v. Bock, 24 Mo. App. 330; Steiner v. Zwickey, 41 Minn. 448, 43 N. W. 376; McNamara v. Pengilly, 64 Minn. 543, 67 N. W. 661; Meyers v. Markham, 90 Minn. 230, 96 N. W. 335, 787; 39 Cyc. 1554, 1555 and 1556; and cases there cited, including the recent case of Weitzel v. Leyson, 23 S. D. 367, 121 N. W. 868, holding that "under a contract of sale of land to which the vendors held no title, they were required, by their

covenant to convey by warranty deed, to procure title in themselves, as a tender of the deed of any other person would not comply with the contract unless the purchaser waived his right to a deed from them." And 29 Am. & Eng. Enc. Law, 610: "The purchaser is not as a rule bound to accept a good title from a third person." "Where nothing to the contrary appears the good title to which the purchaser has a right must be made out by the vendor himself or by his legal representatives acting as such." Citing in addition to the foregoing authorities: Re Bryant, L. R. 44 Ch. Div. 218, 59 L. J. Ch. (N. S.) 636, 63 L. T. N. S. 20, 38 Week. Rep. 469; Hussey v. Roquemore, 27 Ala. 281; Gaar v. Lockridge, 9 Ind. 92; George v. Conhaim, 38 Minn. 338, 37 N. W. 791. To which we may add the recent case of Buswell v. O. W. Kerr Co. 112 Minn. 388, 128 N. W. 459, 21 Ann. Cas. 837, holding: "Where a vendor is under contract to execute and deliver a deed with covenants of warranty, the vendee is not bound to accept the deed of a third party, although the real owner." To hold otherwise "would require respondents to accept a title which it did not contract to receive, and to accept a deed with warranties from a party which it did not agree to accept." Consult title, "Vendor and Purchaser," Century Dig. § 302, and Decen. Dig. § 151.

Respondent attempts to meet the charge of the appellant that plaintiff has not shown his ability to perform the contract, by asserting that "during the life of the contract McVeety had absolute control of the title to the Ross land, and could have conveyed the same to the defendants if the time had arrived when the duty of transferring the title to such defendants was imposed upon him." We have examined all the evidence carefully, and are forced to the conclusion that this statement is not only contrary to fact, but wholly without support in the testimony; and that it is shown, without any conflict, and beyond question, that at no time mentioned in the evidence or within the lifetime of the contract or thereafter, so far as the evidence bears thereon, did McVeety have "absolute control of the title to the Ross land, and could have conveyed the same to the defendants."

The evidence discloses that Ross carefully avoided transferring to McVeety, or dealing with him, or entering into any contract whereby Ross was obliged to transfer to McVeety. The letter of Lyon to the First National Bank of Harvey gave the most explicit instructions

concerning the delivery of the deeds, and directs not the delivery of the deeds to the bank, as McVeety has contracted should be done, but the presentation only of the deeds. Notice these explicit instructions. They read: "Kindly *present* these papers at the bank, but *retain possession* of the same until payment of the above amount *is made to you* for remittance to us." "These papers are to be *presented* by you for us at the Bank of Harvey, and delivered to said bank for the said Harvey Mercantile Company, or directly to the officers of said bank, at said bank, *upon the payment to you for remittance to us of $38,-061.10.*" "We anticipate that after you present these papers at the bank, and *they know that you have them subject to delivery* at any time within the period above mentioned, they will inform you when they are ready to close the deal and pay the money." Notice as yet no delivery is directed to McVeety. Concerning this all that is found in these instructions is the following: "These papers affect a land deal of considerable importance in which James H. McVeety of your city is interested, and no doubt he will see you about it." "These papers are sent to you for the accommodation of Mr. McVeety, and your compensation, including exchange, should be paid by him, and he will pay the same upon request by you so to do. Kindly acknowledge receipt." Such were the instructions concerning the only delivery of deeds authorized by Ross, who has testified he authorized this letter of instructions. When and how McVeety has ever had control of the title to this land must be found contained within these instructions, and they are explicit that a delivery was to be made to no one except the Bank of Harvey or "said Harvey Mercantile Company," and then only upon the payment in cash of over $38,000, not to McVeety, but to the First National Bank, the responsible agent selected by Ross to act for him in the most important matter of the delivery of deeds, the parting with his title and the transmission to him of the purchase price. This is as far from the control of the title as it is from meeting the contract requirement of a delivery by McVeety to defendant, Mercantile Company, of McVeety's warranty deed. And Ross does not claim that he would have executed and delivered his deed to this land to McVeety as grantee. If we would assume that the mere permission by Ross to McVeety to sell Ross's land in question would obligate Ross, if accepted, to transfer to McVeety, we are still met with the barrier that McVeety has never accepted such offer, and has never been, therefore, in position

to compel Ross to transfer to him, and thus clothe him with ability to meet his contract with these defendants.  Not only is there no ability established as ever having been conferred by Ross, but instead there is full and uncontradicted proof that McVeety did not have the ability, not having even the right of purchase as against the owner of the premises he has contracted to sell defendants.  Respondent, on this question of ability to transfer, in the brief says:  "Defendants, however, never called plaintiff's attention to the fact that the transfer of title was from Ross instead of McVeety, and never objected thereto, *although McVeety was able to give his own deed, and was ready to take any steps necessary to a full performance.  McVeety also had absolute control of the title.*" What is here said as to the failure of appellants to object is predicated upon a statement that McVeety was able to give his own deed, and was ready to take any steps necessary to a full performance, which we have shown is contrary to the evidence and an unwarranted assumption of fact.  So far as this is urged on the question of tender of performance by McVeety, it is immaterial, as an ability to perform must be established before a tender of performance or any alleged default thereunder and accruing from a tender can be material.  We are therefore not concerned with what the legal effect of a tender of performance by McVeety to defendants would have had upon the rights of the parties, because it affirmatively appears that McVeety had not the ability at any time to perform his part of his contract.  And the same is true as to all testimony concerning the failure of the defendants to proceed with the inventory during the week of June 6th to 11th inclusive. Grant that defendants became in default in failure to proceed with the inventory and were in default thereafter, which under the evidence is doubtful, that in no wise relieves plaintiff from the burden assumed by him at the commencement of the action, by his pleadings, and remaining throughout, that before he could recover, regardless of the defaults of the defendants, he must have shown his own ability to have performed his agreement to convey by his own warranty deed during the lifetime of the contract or within a reasonable time thereafter, granting that time is not of the essence of this contract.  It is indeed doubtful if the complaint in this action on the question of ability is not demurrable as containing insufficient allegations in such respect, an allegation of willingness and ability to perform not pleading the facts.

Washington v. Ogden (Turner v. Ogden) 1 Black, 450, 17 L. ed. 203, wherein concerning a similar contract of purchase and sale, and a recovery of damages thereon, the court says: "To entitle the plaintiffs below to recover in this suit, the declaration should have averred that such deeds of surrender and cancelation had been duly executed; that the plaintiff had a perfect title free of all encumbrances, and was able as well as willing and ready to convey a good title to the plaintiff on the day named in the agreement. But he was not able to prove such averments if they had been made, and in his case failed both in its pleadings and in its proofs." It is unnecessary to declare this rule as to pleading there announced as controlling, but this case cited but adds to the many already given as to the necessity to prove ability of performance. Manifestly plaintiff could never have plead facts sufficient to show what he has alleged by legal conclusions instead; that is, his ability to perform this contract he had made with these defendants.

The evidence shows conclusively that on a new trial plaintiff would be unable to establish that he ever had the ability required to perform the contract. Ross parted with title to a half section of this land about contemporaneous with the commencement of this action, and his testimony is that he never made any further attempt to permit McVeety to close the deal. The title papers were returned to Ross, and with their return expired McVeety's permission to deed to others the land of Ross. It conclusively appears that McVeety cannot establish any other act toward a performance of his contract than already disclosed in evidence. Defendants at the close of plaintiff's case, and again at the close of all the testimony, moved for a judgment of dismissal on the particular grounds here upheld, "that the plaintiff has failed to show that he was able to perform the contract according to its terms," again urged on defendants' motion for judgment of dismissal notwithstanding the verdict. It is, therefore, ordered that the judgment appealed from be in all things set aside and that the District Court enter a judgment dismissing this action, with costs below and on appeal awarded to defendants and against plaintiff.